## No. 17,199.

### INDUSTRIAL COMMISSION *v.* BRADY.

(263 P. [2d] 578)

Decided November 23, 1953.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. HENRY E. ZARLENGO, Assistant, for plaintiff in error.

Mr. PHILIP HORNBEIN, Mr. PHILIP HORNBEIN, JR., Mr. ROY O. GOLDIN, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as the Com-

mission, seeks reversal of the judgment and order entered by the district court reversing a finding and order of the Commission, which denied defendant in error, hereinafter referred to as Brady, unemployment compensation benefits claimed under chapter 167A, '35 C.S.A.

Brady was a journeyman painter, and had been such for thirty years. He was a member of the Painters Union. Until ·October, 1952, when he became unemployed, Brady had been receiving $2.39 per hour as wages, working forty hours a week, and for overtime he received time and a half pay. On December 17, 1952, Brady, then eligible for unemployment benefits, was referred to one Davis by the Department of Employment Security for a job as a painter, and was informed that the compensation would be two dollars per hour for a forty-eight hour week, without additional compensation for overtime. Brady inquired if it was a union job, and upon being informed that it was not, he declined to interview Mr. Davis, giving as his reasons the difference in compensation, hours of employment, and that it was a nonunion job. Because of Brady's declination to interview Davis and pursue the matter, the Deputy of the Employment Security Department disqualified him under Section 5 (a) 2 (b) of chapter 167A, supra. The Deputy ruled that Brady was not entitled to benefits under the Act. The referee of the Department held that the claimant was not disqualified, and on appeal the Commission reversed the referee, concluding that Brady was disqualified by his refusal to accept the tendered employment.

The referee found that the prevailing wage for painters was $2.39 per hour for a forty-hour week, with time and a half for overtime. This determination was not set aside or modified by the Commission. The order of the Commission states "that the Findings of Fact of the referee clearly established that the claimant refused without good cause to accept referral to suitable work."

This was not the findings of the referee. The Commission then posed the question whether the tendered wage of $2.00 per hour was substantially less favorable "when the prevailing wage for similar work in the locality falls somewhere between $2.00 and $2.39." Nothing in the record sustains any conclusion that the prevailing rate of pay was less than $2.39 per hour for a forty-hour week. The Commission concluded its order thus: "that the decision of the referee holding that the claimant refused an offer of unsuitable work was made in conflict with the law in such case made and provided." Brady took the case to the district court, and there the decision of the Commission was reversed, from which order and judgment the Commission brings the case here by writ of error.

The pertinent portions of section 5 of the unemployment compensation Act are the following:

"Section 5. Disqualification for benefits. An individual shall be disqualified for benefits—

a) If the Department finds that such individual has * * * (3) failed without good cause * * * to accept suitable work when offered him.

"(2) Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"(b) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality."

We are called upon to apply the intention of the General Assembly in enacting this legislation to the facts as disclosed by the record. Patently an unemployed workman is not to be disqualified for unemployment benefits if the work tendered by the Department is at a wage, or the hours thereof, or other conditions of the employment are substantially less favorable to the workman than

those enjoyed by others engaged in similar employment in the locality. Counsel for the Commission state that the "commission must first determine what was the prevailing wage for similar work in the locality;—clearly involving a pure question of fact." They argue that the Commission made its decision upon conflicting evidence. We have carefully examined the record to ascertain if there was substantial competent evidence on which the Commission could make the determination it did make.

It may be well to here note that the trial court in its order made the following recital, which cannot be ignored: "On trial of this case in this court counsel of record for the defendant (the Commission) conceded that the prevailing rate was $2.39 per hour."

The sole witness for the Commission was one of its Interviewers in the Employment Service of Colorado. In his testimony we find the following: "Q. Mr. O'Neill, are you familiar with the prevailing rate of pay in the painting industry in Denver? A. I am familiar, yes, to the extent that I know from the number of orders that we have received about what the prevailing wage is. Q. Do you know what the Union wage is? A. Yes sir. Q. What is the Union rate? A. $2.39 for brush painters."

* * *

"Q. Your only knowledge as to the wages paid—the wages paid painters in this area, is what people have called up on the telephone and told you they are willing to pay? A. That and sometimes they come into the office and give us the order."

The witness then said he had thirty-two such orders picked at random from his files in the Commission office. He also said that the Commission received very few orders for union painters. He further testified: "Q. Now, I want to know what evidence you used to determine what the prevailing wage scale was. A. It is determined from the fact of what the various employers offered for those jobs as they came in."

* * *

"Q. You don't know whether that group of orders you

got is in any way representative, do you? A. It's representative of the orders we receive. Q. But you don't know whether it's representative of all the painters in the area? A. No, I can't answer that because the only thing we can go by is the number of orders that we receive."

It also appeared from the testimony of this witness that J. E. Davis, to whom Brady was referred and who offered to pay $2.00 per hour for a painter, was unable to get anyone to work at $2.00 per hour through the employment department. The witness did not know how many of the persons placed by his department were journeymen painters. This amounts to nothing more than evidence of a wage at which some employers hope to obtain painters. It bears no relation to the prevailing wages for similar work in the locality.

Brady introduced seven witnesses, all contractors, each employing from eighteen to three hundred painters. They testified that the prevailing wage for journeymen painters in the Denver area was $2.39 per hour. J. E. Davis, to whom Brady was referred, testified that he had paid a man "he considered a journeyman" painter $2.39 per hour, and also testified: "I don't offer a man *scale* wages unless I know he can earn them." (Emphasis supplied)

The record shows that early in January, 1953 Brady did go to work at $2.39 per hour. The competent evidence before the Commission disclosed that at least eighty-five per cent of the painters in the Denver area were paid $2.39 per hour, and that this was the prevailing scale of wages for journeymen painters. This evidence was direct, positive and undisputed.

Was the employment suggested to Brady, and by him declined, substantially less favorable than a job which pays $2.39 per hour and time and one-half for overtime beyond forty hours per week? Assuming other conditions to be equal, it is apparent that where the wage differential amounts to $15.60 per forty-hour week, or

$624.00 per year on a forty-week year, such employment as that tendered Brady was substantially less favorable to the individual than that prevailing for similar work in the locality.

██ ██ Findings of fact by the Commission, if supported by substantial evidence, in a proceeding under this statute, are conclusive in the courts. Section 6 (k), chapter 167A, '35 C.S.A.; *Bryant v. Hayden Coal Co.*, 111 Colo. 93, 137 P (2d) 417. Here, however, there was no substantial evidence to support the findings of the Commission. Isolated instances of what some contractors were willing to pay painters does not constitute substantial evidence of the prevailing wage scale. The trial court properly concluded that the record as presented disclosed nothing justifying the Commission in its conclusion that Brady was disqualified because he did not accept the work offered by the Department.

The judgment of the trial court is affirmed.