No. 17,404.

INDUSTRIAL COMMISSION ET AL. *v.* WILBANKS.
(274 P. [2d] 99)

Decided July 19, 1954.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy, Mr. HENRY E. ZARLENGO, Assistant, for plaintiffs in error.

Messrs. HORNBEIN & HORNBEIN, Mr. ROY O. GOLDIN, for defendant in error.

*En Banc.*

MR. JUSTICE BRADFIELD delivered the opinion of the Court.

THIS is a workmen's compensation case brought to our Court by writ of error to review a judgment of the dis-

trict court of the City and County of Denver. In the trial court defendant in error was claimant, and plaintiffs in error were defendants. We will herein designate defendant in error as claimant, plaintiffs in error, the Industrial Commission of Colorado, ex officio Unemployment Compensation Commission of Colorado as the Commission, and Department of Employment Security as the Department.

June 20, 1953, claimant filed his application for unemployment compensation at Loveland, Colorado, under the Colorado Employment Security Act, '53 Cum. Supp., to '35 C.S.A., c. 167A, and was found eligible for benefits for July, August and to September 19, 1953.

On September 18, 1953 claimant was offered employment as a carpenter at the Harmony Ranch (Scott Hayes), at Estes Park, Colorado, on a nonunion job, at $2.00 per hour. Claimant was a member of A.F. of L. Carpenter's Union, Local 1340. He reported to the job and was advised he would be paid union wages, but not time and a half or overtime or double time for Sundays. Claimant worked Saturday, Monday and one hour and a half on Tuesday at $2.00 per hour. He then quit work because it did not pay time and a half for overtime and later refused a re-offer of the same work for the same reason.

Thereupon the Department found claimant had voluntarily left work with the Hamony Ranch without good cause and later failed to accept an offer for suitable employment by the Harmony Ranch, and reduced the maximum benefits payable to him in the amount of $272.75. Claimant was disqualified from benefits for four weeks, September 20, 1953 to October 17, 1953 for voluntary quitting without good cause, and further was disqualified for six weeks, October 11, 1953 to November 21, 1953 for his refusal of the offer of suitable employment. From this finding and ruling of the Department claimant appealed to the Referee for a reversal, on the ground, "My employer was not paying the Union scale. I con-

sider this good cause for quitting and not accepting a second referral of the job." The union scale called for time and a half for overtime. The Referee sustained the determination of the Department.

From this ruling of the Referee, claimant appealed to the Commission which sustained the Referee and thereafter denied a review of its decision thereon. From the findings and judgment of the Commission, claimant appealed to the district court of the City and County of Denver; the trial court reversed the Commission's findings and judgment. To review this judgment of the district court, the Commission procured a writ of error from our Court.

The trial court found:

"1. The finding of the defendant Industrial Commission of Colorado that the prevailing wage scale for carpentry work in the Estes Park area is $2.00 per hour is not supported by, and is contrary to, the evidence in the case.

"2. The evidence conclusively established that the prevailing wage scale for carpentry work in the Estes Park area is not less than $2.35 per hour with time and one-half for work performed in excess of 8 hours per day or 40 hours per week.

"3. It is undisputed that the employment offered to claimant paid $2.00 per hour without overtime pay for work performed in excess of 8 hours per day or 40 hours per week.

"4. The wages and working conditions on the job offered to the claimant were substantially less favorable than those prevailing for similar work in the Estes Park area."

'53 Cum. Supp., to '35 C.S.A., c. 167A, provides:

"Section 5. An individual shall be disqualified for benefits — (a) If the department finds that such individual has * * * [1] left work voluntarily without good cause, or * * * [3] failed without good cause * * * to accept suitable work when offered him.

█ * * * no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

"* * * (b) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality."

Section 6 (k), Vol. IV-B, '35 C.S.A. provides:

"* * * In any judicial proceedings under this section, the findings of the commission as to the facts, if supported by substantial evidence and in absence of fraud, shall be conclusive. * * *"

The findings and decision of the Commission, sustaining the findings of the Referee and the Department, were that claimant became disqualified for quitting his work without good cause and for his refusal to accept an offer of employment under section 5 (a) (1) and (3). The trial court entered a summary judgment reversing the findings and decision of the Commission and in lieu thereof substituted its own findings and judgment. The case was submitted to the Commission, to the district court, and here, on the testimony introduced before the Referee.

At the Referee's hearing, claimant appeared in person and by Davis E. Graham, Business Agent, Carpenter's Local No. 1340.

The claimant testified:

"The Referee: Q. You were working on a job for the Harmony Ranch in September. Tell us what happened on that job. A. * * * he said it's not a Union job but we're paying Union wages. So I * * * worked on Saturday, the first day, and Monday, then Tuesday, and we understood that they wouldn't pay any overtime, but we'd work Saturdays. He wanted us to work after eight hours in a day. So, on that set-up, why — it was the cause of me quitting because under our agreements and rules and regulations of the Union, any time after eight

hours is overtime, and any time over our forty hours * * * is overtime. Time and a half, which I've been accustomed to get. Q. And so when you were advised that it was a non-union job and they wouldn't pay overtime on it you quit your job? A. No. Not that it was not a Union job. I quit because they would not pay the time and a half. * * * They worked me on Saturday. They didn't have to do it, but if they did they should have paid me my time and a half.

"The Referee: Q. * * * That wouldn't make any difference whether the job paid the Union wage or whether it didn't pay the Union wage, it is not the controlling factor. And whether or not it paid any overtime is not the controlling factor, as long as it did pay the prevailing wage for that type of work in the community. * * * Well, the rate of pay was $2.00 — was the Union wage rate of $2.00 per hour, which is the prevailing rate up here?"

Mr. Graham (Business Agent, Carpenter's Local No. 1340) (statement): "I believe that I'm right in saying that the area practice in Estes Park is $2.00 per hour, all overtime is at the rate of time and a half. * * *"

John Klein testified in part: "A. I am Business Agent for the local Union at Estes Park, Carpenter's. Q. Mr. Klein, what is the prevailing rate for carpenters in the Estes Park area? A. $2.00 an hour and time and a half for all over forty hours per week. * * * Q. What do other contractors up there pay? A. They pay from $2.00 up, sir. Q. What do the individuals who employ carpenters around there pay? A. The same. Q. $2.00 an hour? A. The same."

Mr. Henry Wagner testified in part: "Q. Mr. Wagner, you are employed in the Employment Service office (at Loveland)? A. Yes, sir. * * * Q. What is the customary rate of pay for carpenters in this area? Prevailing rate of pay? A. About $1.75. Q. What portion of your job orders that you get in this office are on a $1.75 base? * * * A. I'd say pretty near all those that we get in the

Loveland area here, right here in town, would be about that. * * * Q. Now, the job orders you get to Estes Park, through this office, what percent of them pay $1.75 an hour? A. * * * I wouldn't attempt to say what the scale would be, because I wouldn't know. I don't know what they are up there."

"Mr. Graham (statement): * * * Now, we consider Fort Collins, Loveland, Berthoud, all of Larimer County except up to Drake, in our area. The majority of work done in our area is done by Union contractors and Union carpenters and the wage rate is $2.35 per hour. All of the Big Thompson projects was done with Union help at the prevailing wage rate of $2.35 per hour. * * *"

Earl Denton (Manager of Employment Office at Loveland) testified in part: "Q. What is the prevailing rate for carpenters in the Loveland area? A. The Union scale in this area has been $2.00 an hour. $2.35 per hour. Q. And that's on an eight hour a day forty hour a week basis? A. That's right. Q. * * * Now, what is the prevailing wage? A. * * * We find some of these local contractors that are having the men work for them from $1.75 to $2.00 or $2.35, the Union scale. * * * Q. Now, of the majority of the carpenter work which is being done in this area, what percentage of it is being paid at the rate of $2.35 an hour. A. I say it's 75% of it. Because most of our contractors in this area now are the big contractors, and they are all under the Union scale. * * * Q. What's the prevailing wage rate at Estes Park? A. It's a little bit higher, around $2.25 to $2.50. Q. Well, now on this Notice of Referral on (claimant) Jeff Wilbanks, you indicated that $2.00 an hour was the Union scale. And that the Harmony Ranch was paying the Union wage rate, although they were not willing to pay overtime. What was the basis of making that statement? A. * * * (the Harmony Ranch) advised me they would pay the Union scale for a forty hour week. * * * Q. * * * he was paying the Union scale $2.00 an hour up there. Apparently that was the Union scale? * * * A. At the

time the job was offered I understood that $2.00 was the Union scale. Q. And that he wouldn't pay any overtime? A. That is right. Q. Well, now in your opinion, was that the prevailing wage up in the Estes Park area? A. It was. Q. And it wasn't substantially less favorable than the wages which were being paid to most of the men who worked in this area? A. That's right. Q. And you felt that this was a suitable job, and you could refer Union men to it? A. That's right. * * *"

There were no other witnesses testifying herein.

On this pertinent disputed testimony the Referee found in part: "The testimony indicates that the $2.00 per hour wage rate offered was the prevailing wage rate. The mere fact that a particular employer will not pay overtime at a time and one-half rate does not render the job unsuitable, nor does it make the working conditions substantially less favorable to the individual than those which prevail in the area so as to render the job unsuitable. * * *.

"Decision: This claimant did leave his employment * * * on September 23, 1953 and he has failed to establish that he did have compelling good cause for so doing. * * * The claimant refused to accept an offer of reemployment on October 16, 1953 and he has failed to establish good cause for this refusal of suitable work. * * *"

The pertinent questions here presented are: What is "the locality" involved; what were the prevailing "wages, hours and conditions of the work offered;" were they "substantially less favorable to the individual than those prevailing for similar work in the locality;" were the findings of the Commission as to the facts supported by substantial evidence.

The trial court found the prevailing wage for the Estes Park area was not $2.00 an hour, but instead was $2.35 an hour. The wage rate was in dispute. Mr. Graham's "statement" of the $2.35 wage rate was not evidence, but only his opinion as a union official. Witness Denton of the Employment office at Loveland testified, not from

facts within his knowledge, but as his opinion from his office files, that the prevailing union wage at the Estes Park area was $2.25 to $2.50 an hour. As against this was the direct positive testimony of Witness Klein, of the local carpenter's union at Estes Park, that the *prevailing wage rate* at the Estes Park area was $2.00 an hour. Witness Denton also testified he had referred claimant to the Harmony Ranch job, advising claimant their wage scale was $2.00 an hour which was the union scale. He further testified the job "wasn't less favorable than the wages which were being paid to most of the men who worked in this area." That the "Union scale" may be $2.35 an hour is not the controlling factor—what was the "prevailing scale" in the locality?

The Estes Park area was disclosed to be a distinct locality. The cited testimony discloses the Referee found on disputed facts that the *prevailing wage* in that locality was $2.00 per hour; and that the wages and working conditions of the job offered to the claimant were substantially not less favorable than those prevailing in similar work in the Estes Park area.

If the question of "overtime," as such, is here involved, the evidence thereon does not disclose how much overtime, if any, was involved, nor when it would be required. The evidence is too vague and uncertain to calculate accurately any earnings thereon which would render the conditions of employment substantially less favorable. The Commission sustained the findings of the Referee.

Claimant cites *Industrial Commission v. Brady,* 128 Colo. 490, 263 P. (2d) 578, but that case is not here in point, being based on a factual situation different from that of the case at bar; however, the law cited therein is here applicable: that, "Findings of fact by the Commission, if supported by substantial evidence, in a proceeding under this statute, are conclusive in the courts."

The findings and judgment of the district court

44

not being sustained by the evidence, the judgment is reversed and the cause remanded to that court for further proceedings in accordance with the views herein expressed.

MR. CHIEF JUSTICE STONE and MR. JUSTICE MOORE dissent.