No. 19,859.

Everett C. Bunzel, etc., v. City of Golden.

(372 P. [2d] 161)

Decided June 11, 1962.

Mr. Marshall Quiat, for plaintiff in error.

Messrs. Bradley, Carney & Johnson, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to plaintiff in error by name and to defendant in error as Golden or the city.

Bunzel, by complaint for declaratory judgment, sought to invalidate a city ordinance on the ground that it, as amended, violated Article 2, Section 3 of the Constitution of Colorado and the Fourteenth Amendment to the Constitution of the United States.

In substance, it was stipulated that Bunzel owned property in Golden and conducted a bowling alley thereon; that he owned and operated on said premises four coin-operated "pinball" machines; that Golden adopted an ordinance regulating the use of said machines which included the following pertinent provisions:

"Section 1.

"C. Operator.

"That the term 'Operator' as used in this Ordinance shall include any person, firm or corporation owning or controlling one or more coin-operated amusement games or coin-operated musical devices which are rented, displayed or otherwise used in a place of business not under control of such operator, *and shall also include any person, firm or corporation who actually owns and operates more than three coin-operated amusement games or coin-operated music devices and which are used or operated in his or its own place of business.* (Emphasis supplied.)

\* \* \*

"Section 4.

"Upon application to the City Council and the payment of the annual license fee of One Hundred ($100.00) Dollars for each coin-operated amusement game or device, an Operator's license will be issued to any person, firm or corporation, provided however, such person, firm or corporation shall not have violated any of the

provisions of this ordinance, or any other ordinance governing such devices. * * * "

Originally the licensing ordinance provided for the payment by the "operator" of an annual license fee of $1,000.00 but this was changed by subsequent amendment to require the payment of an "annual license fee of One Hundred ($100.00) Dollars for each coin-operated amusement game or device." The ordinance establishes three classifications of licenses for individuals using pinball machines.

1. The operator — he owns one or more machines operated in the place of business of others, or he owns four or more machines operated at his own place of business.

2. The operator-dealer — he owns three or less machines operated at his own place of business.

3. The dealer — he rents machines from others and operates them at his own place of business. (The operator license is $100 per machine. The dealer's license and dealer-operator's license is $10 per machine.)

Golden demanded the payment of an annual license fee of $400.00 which Bunzel refused to pay.

Questions To Be Determined.

First. *Does the ordinance deprive Bunzel of the equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States?*

This question is answered in the negative. The argument advanced on behalf of Bunzel is that the classification set up by the ordinance is unreasonable and discriminatory. Council asserts:

" * * * In the instant case, the discrimination is on the basis of property ownership to accomplish the purpose of regulating the number of pin ball machines in a business establishment, presumably to promote the public weal; a rather unusual classification for this purpose. * * * "

C.R.S. '53, 139-32-1 (66) empowers the city of Golden:

"To license, regulate, tax or prohibit and suppress

billiards, bagatelle, pigeonhole, or any other tables or implements kept or used for a similar purpose in any place of public resort, and pin alleys and ball alleys."

It is a well established legal principle that with reference to businesses which are inherently useful and harmless, "A license fee may be imposed under the police power which will legitimately assist in the regulation of the business or occupation for which it is exacted. * * *" 33 Am. Jur. §43, p. 366. A license fee thus imposed on a useful or harmless occupation must not, however, amount to a prohibitive or unreasonable restraint on the right to profitably engage therein.

The instant case does not involve the licensing of a business which is inherently useful or harmless. By statute the city is specifically authorized to prohibit entirely the use of such machines. This court has held that pinball machines may be used as gambling devices, and has refused to enjoin officers from seizing them under the terms of local ordinances. *Walker v. Begole,* 99 Colo. 471, 63 P. (2d) 1224; *Gambling Devices v. People,* 110 Colo. 82, 130 P. (2d) 920.

From 53 C.J.S., p. 512, §17, we quote the following statement of the general rule:

" * * * With respect to those occupations or forms of business, however, that are not useful, but are inherently harmful and dangerous to society or the public welfare, license requirements and exactions may be so imposed as to discourage and even amount to a prohibition of them."

Bunzel's complaint is that because he operates four machines he is an operator and must therefore pay $100 per machine, whereas, if he owned only three machines he would pay $10 a machine. We fail to see how he has been discriminated against. Since he owns *and* operates the machines at his place of business, his total fee is $400. Under any other situation, the fee would be greater. If he leased the machines to be operated at another place of business, the total fee would be

$440. (The operator's license for four machines at $100 plus a dealer's license for the place where the four machines are being operated of $40.) If Bunzel leased the machines from another operator, the total fee would still be $440. Thus, Bunzel's fee is less than others would be.

■ With only three machines, Bunzel's advantage is even greater. Then he could obtain a dealer-operator's license for three machines for a total of $30 while others would have to pay $330 for license fees for the machines. Since Bunzel has not in any way been aggrieved by the ordinance, he is in no position to challenge its constitutionality. *Rinn v. Bedford,* 102 Colo. 475, 84 P. (2d) 827; *Jackson v. Denver,* 109 Colo. 196, 124 P. (2d) 240.

Second. *Does the ordinance as applied to Bunzel deprive him of rights guaranteed by Article II, Section 3, of the Constitution of Colorado?*

■ This question is answered in the negative. On behalf of Bunzel it is argued that the ordinance deprives him of the right to earn a livelihood in that the tax imposed is unreasonably out of proportion to the profit that might otherwise be enjoyed; that the operation of pinball machines is a lawful occupation and that any license fee must bear a reasonable relation to the expense of regulation of the business. The cases cited in support of these arguments deal with the licensing of occupations which are useful and harmless. In all those cases occupations were involved which could not be prohibited in the exercise of the police power of the state. The particular language of the constitutional provision relied on is as follows:

"INALIENABLE RIGHTS. — All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness."

This provision does not confer upon the citizen a con-

stitutional right to conduct a business which may be inimical to the public morals. The cases cited in support of our conclusion with reference to question Number One above, are equally applicable on this point.

The judgment is affirmed.