No. 20570.

BAYLY MANUFACTURING COMPANY *v.* THE DEPARTMENT
OF EMPLOYMENT, ET AL.
(395 P.2d 216)

Decided September 14, 1964.

434

Messrs. PHELPS, HALL & SMEDLEY, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JAMES D. MCKEVITT, Assistant, for defendants in error The Department of Employment of the State of Colorado, Frank N. Van Portfliet, Ray H. Brannaman and Truman C. Hall, as members of the Industrial Commission of the State of Colorado (Ex-Officio Unemployment Compensation Commission of the State of Colorado).

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS writ of error is directed to a judgment of the district court affirming awards of unemployment compensation benefits to thirteen claimants who had been employees of plaintiff in error, Bayly Manufacturing Company, hereinafter referred to as Bayly.

Bayly's contentions on this writ of error fall into two general categories: (I) those concerning the constitutional issues, and (II) those concerning the merits of the awards. We shall consider the alleged errors in the same order.

### I. *The Constitutional Issues*

Bayly hurls sweeping broadsides against the Employment Security Act on constitutional grounds, against

the Department of Employment Security and the claimants. We view the Act as legislation intended to "foster and make secure the independence (actual and felt) of the individual, his dignity and autonomy, and his sense of economic security. The ethical relation between society and the claimant is that of obligee and obligor, not beggar and benefactor." Note: *Charity Versus Social Insurance in Unemployment Compensation Laws,* 73 Yale L.J. 357, 362. It is in this perspective that we examine Bayly's objections to the Employment Security Act on constitutional grounds.

 It is our view that in the present case Bayly has the standing necessary to attack the constitutionality of the Employment Security Act on only one of the issues it raises, and that is the contention that C.R.S. '53, 82-5-2 amounts to a deprivation of due process of law in that benefits are paid out regardless of any appeal to the courts. The pertinent language of the statute on this point is as follows:

"* * * If a referee affirms a decision of the deputy, or the commission affirms a decision of a referee, allowing benefits, such benefits shall be paid regardless of any appeal which may thereafter be taken, but if such decision is finally reversed, no employer's account shall be charged with benefits so paid."

In *Cottrell Clothing Co. v. Teets,* 139 Colo. 558, 342 P.2d 1016, the same objection now made by Bayly was held to be without merit. The provision in question is designed to carry out the policy of alleviating the evils of unemployment. The very essence of the Act is its provision for the prompt payment of benefits to those unemployed. Any substantial delay would defeat this purpose and would bring back the very evil sought to be avoided. Withholding benefits for long periods through the slow process of appeal to the courts simply is not in harmony with the beneficent and remedial purposes of the Act. Similar sentiments are expressed in *Abelleira v. District Court of Appeal, Third District,* 17 Cal.

2d 280, 109 P.2d 942, 132 A.L.R. 715; *Matson Terminals v. California Employment Commission,* 24 Cal. 2d 695, 151 P.2d 202; *State ex rel. Aikens v. Davis,* 131 W. Va. 40, 45 S.E. 2d 486. In reality, the statute itself is sufficient answer to this argument, for it provides that "if such decision is finally reversed, no employer's account shall be charged with benefits so paid."

The remaining constitutional issues which Bayly raises are:

I. C.R.S. '53, 85-2-6 and C.R.S. '53, 82-3-9 (1) (2) and (3) constitute an unlawful delegation of the power of the General Assembly to the United States Congress;

II. C.R.S. '53, 82-3-10 relating to reciprocal interstate agreements violates the Constitution of Colorado in that it (a) enables the department to pledge the faith and credit of the state contrary to Article XI, Section 1; (b) enables the department to contract debts by loan contrary to Article XI, Section 3; (c) enables the department to create debts by agreement, not by law, contrary to Article XI, Section 4; (d) constitutes an unlawful delegation of legislative power to the department and to other states.

■■ The record before us is totally barren of any evidence which would show how Bayly has been in any wise adversely affected by these sections of the Act. It is manifest that this Court does not overturn statutes presumptively valid on the strength of the speculations and conjectures of counsel as to what might happen under them. Since the present record fails to reflect that Bayly has been in any way adversely affected by these sections of the statute, it has no standing to question their constitutionality. *Rinn v. Bedford,* 102 Colo. 475, 84 P.2d 827; *Bunzel v. City of Golden,* 150 Colo. 276, 372 P.2d 161. As is suggested by the cases cited, the fact that Bayly chooses to call this aspect of its case an action for declaratory judgment is of no moment, since it still must show how it is affected by the operation of the statutes.

## II. *The Merits*

The issues presented here on the merits are covered by C.R.S. '53, 82-4-8, as amended, and C.R.S. '53, 82-4-9, as amended, as those sections read before the 1963 repeal and re-enactment with amendments of Sec. 82-4-9.

The claimants were employed by Bayly as garment workers in its Denver plant. Their wages were determined on a piece-rate basis established by union contract. Each claimant had developed, by virtue of her many years of experience, a special skill in the tacking or sewing of seams on a jean garment manufactured by Bayly in its Denver plant. In December, 1960, Bayly terminated this operation in Denver and transferred it to Greeley, which is some distance from the Denver area.

Subsequent to the transfer of the jean operation to Greeley, some of the claimants remained at the Denver plant, working at tacking or sewing on overalls and coats, while the rest were laid off without this opportunity being afforded to them at that time. Those of the claimants who commenced work on overalls attempted to become proficient over varying periods of time, but they all eventually terminated their employment when it became apparent that they could not make a wage comparable to their past earnings.

The record discloses that while the claimants had been earning approximately $1.40 per hour to $2.00 and above per hour on the jean operation, they could make only approximately $1.00 per hour on the overalls operation, since they could not turn out as many pieces per hour, and that in some cases Bayly itself was forced to make up the difference so as to insure that the claimants would receive a minimum wage rate of $1.00 per hour. The piece-work wage rate on the overalls operation at Bayly's was the prevailing wage rate at other garment manufacturing plants in the Denver area, and was in accord with a union contract at Bayly's shop.

In April, 1961, Bayly made offers to re-hire claimants to work on overalls. While the precise date differed in

each case, for our purposes April 28 may be considered as the date of the offer. The claimants refused to accept this offer. Bayly's chief contention is that by their refusal to accept the offers of re-hire the claimants disqualified themselves from receiving further benefits after that date.

While counsel for both sides in their briefs and in oral argument before this Court have taken the attitude that all thirteen claimants stand in a similar position, we do not necessarily share this view since the last day worked by each of the various claimants was different.

Bayly contends that in awarding benefits the Department of Employment Security and the Industrial Commission ignored the requirements of C.R.S. '53, 82-4-8, which are as follows:

"*Eligibility conditions—penalty*—Any unemployed individual shall be eligible to receive benefits with respect to any week only if the department finds that:

\* \* \*

"(3) He is able to work and is available for all work deemed suitable pursuant to the provisions of section 82-4-9.

\* \* \*

"(7) He is actively seeking work."

The pertinent provisions of C.R.S. '53, 82-4-9, referred to in C.R.S. '53, 82-4-8 (3), are as follows:

"Disqualification for misconduct—(1) (a) An individual shall be disqualified for benefits if the department finds that such individual has, from the beginning of his base period to the time of filing any valid claim, left work voluntarily without good cause but under extenuating circumstances, or left work to marry or because of marital, parental, filial or other domestic obligation, or become unemployed because of pregnancy, or been discharged for misconduct connected with his work, or failed without good cause either to apply for available suitable work when so referred by the depart-

ment or to accept suitable work when offered him. (1960 Perm. Supp.)

"(2) In determining whether or not any work is suitable for an individual, the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing work in his customary occupation, and the distance of the available local work from his residence, shall be considered.

\* \* \*

"(3) Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

\* \* \*

"(b) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality."

The findings of the referees in the cases before us, which were adopted by the Industrial Commission as its findings, state, except in two cases, that Bayly's offer of re-hire was not for "suitable" work because of the prior experience, training and earnings of the claimants. In the case of claimant Hulin, the finding was that the job offered would be injurious to her health. In the case of claimant Cole, the finding was that she refused the Bayly offer because she had another job which would pay better wages and that she was about to begin that job. Bayly contends that the mere fact that the job offer was at a rate of pay which produced less earnings per week than the claimants had earned in their previous jobs was not sufficient to render the offer unsuitable.

The record does not disclose whether any other garment manufacturer in the Denver area had an operation

similar to the jean operation which was discontinued by Bayly. If such operation did in fact exist at other plants, none of the claimants attempted to seek employment at such operation. The only fact disclosed in the record with respect to wages at other garment manufacturing plants in the Denver area is that the wage rate was similar to that which the claimants would receive if they chose to work at Bayly's overalls operation. The record also shows that the claimants' attempts to gain other employment were primarily directed at work other than in the garment industry at wages comparable to those they had received from Bayly while employed at the jean operation and that these attempts were unanimously unsuccessful up to the date of the offer of re-hire.

 It is clear that the beneficent purposes of the Act do not include a guaranty that a job offer must be for wages equal to that of the old job in order to be deemed as "suitable" work, but work at a substantially lower wage should not be deemed "suitable" unless a claimant has been given a reasonable period to compete in the labor market for available jobs for which he has the skill at a rate of pay commensurate with his prior earnings. Where the offer is for work at a wage materially lower than the wage previously earned, the claimant may be justified in refusing the offer while seeking employment at a rate of pay commensurate with prior earning capacity, but this right is not without qualification and the claimant is entitled only to a reasonable opportunity to obtain work for which he is fitted by experience and training at a wage rate comparable to that for which he previously worked. The claimant may, if he wishes, place restrictions related to his prior employment upon the amount of wages he is willing to accept, but if the restrictions imposed by him reduce his prospects for employment to such an extent that he is no longer genuinely attached to the labor market, he is no longer available for work. Work which

may be deemed "unsuitable" at the inception of the claimant's unemployment, and for a reasonable time thereafter, because it pays less than his prior earning capacity, may thereafter become "suitable" work when consideration is given to the length of unemployment and the prospects for obtaining customary work at his prior earning capacity. What is a "reasonable time" is not rigid and inflexible and it must initially be determined as a question of fact under the peculiar circumstances of each individual case by the appropriate agency. See *Hallahan v. Riley*, 94 N.H. 48, 45 A.2d 886, *Haug v. Unemployment Compensation Board of Review*, 162 Pa. Super. 1, 56 A.2d 396; *Pacific Mills v. Director of Division of Employment Security*, 322 Mass. 345, 77 N.E. 2d 413; *Dubkowski v. Administrator, Unemployment Compensation Act*, 150 Conn. 278, 188 A.2d 658; *Sanders, Disqualification for Unemployment Insurance*, 8 Vand. L. Rev. 307, 328; *Menard, Refusal of Suitable Work*, 55 Yale L.J. 134, 140; *Freeman, Able to Work and Available for Work*, 55 Yale L.J. 123, 126.

In *Hallahan v. Riley*, supra, we find the following:

"* * * Although the applicant may continue to refuse jobs paying a lower rate of compensation, she must do so at her own expense rather than at the expense of the unemployment fund. *The cushion of security between jobs provided by the statute was not designed to finance an apparently hopeless quest for the claimant's old job or a job paying equal wages.* What length of time should be regarded as sufficient to require this result is again a question of fact with which we have no concern. *The statute specifically requires that consideration be given to the factor of length of unemployment.* * * *" (Emphasis supplied.)

The Attorney General relies on *Industrial Commission v. Brady*, 128 Colo. 490, 263 P.2d 578, but that case is not controlling here. In *Brady* the claimant, a journeyman painter, had been receiving $2.39 per hour, working a forty hour week, with time and a half for over-

time. The claimant became unemployed in October, 1952. On December 17, 1952, he declined an offer for work as a painter at $2.00 per hour for a forty-eight hour week, without additional compensation for overtime. This Court held that the claimant was improperly disqualified from receiving benefits on the ground that the prevailing wage for journeyman painters was $2.39 per hour and that the offer of hire was therefore unsuitable. In the instant case, there is no evidence whatever of a prevailing wage in the Denver area for garment workers employed at a jean operation, if there was any such operation in the area after Bayly discontinued its jean operation. As has already been indicated, the only evidence of a prevailing wage is that other garment manufacturers in the Denver area reward their workers with compensation similar to that which Bayly would pay for the jobs which it offered these claimants, and that the wage offered is within the terms of the union contract at the Bayly shop. It is obvious that under these circumstances *Industrial Commission v. Brady,* supra, is not in point.

 Bayly would have this Court hold as a matter of law that certain of the claimants were not "actively seeking work" pursuant to C.R.S. '53, 82-4-8 (7) and, therefore, should be declared ineligible for benefits. This section of the Act is susceptible of several interpretations. See Peterson, *Unemployment Insurance in Colorado—Eligibility and Disqualifications,* 25 Rocky Mt. L. Rev. 180, 186. Ultimately, however, this concept is incapable of precise definition and it is for the appropriate agency to make such a determination after considering all the facts and circumstances in each particular case. *Guidice v. Board of Review of Division of Employment Security,* 14 N. J. Super. 335, 82 A.2d 206. Our review of the record leads us to the belief that we cannot conclude as a matter of law that the claimants were not "actively seeking work."

The finding of the Industrial Commission that the job

offer to Hulin was unsuitable because the job would be injurious to her health finds support in the evidence and is, therefore, proper. The finding with respect to Cole is also proper under the evidence.

The judgment with respect to the Hulin and Cole claims is affirmed. The remainder of the judgment is reversed and the cause remanded to the district court with directions to remand the matter to the Industrial Commission for the purpose of determining whether the length of unemployment of each of the claimants at the time of the hearing afforded each of them a reasonable opportunity to secure work in their customary occupation or at their customary wages.

MR. JUSTICE HALL not participating.