586 P.2d 1342 (1978)
The DENVER POST, INC., a Colorado Corporation, Petitioner,
v.
DEPARTMENT OF LABOR AND EMPLOYMENT, Industrial Commission of the State of Colorado (ex-officio Unemployment Compensation Commission of Colorado), and John A. Abell, James M. Biggins, Robert W. Charboneau, Doris K. Corkins, Helen C. Dwyer, David D. Erdmann, Joseph J. Fife, Betty S. Gaylor, Bertie C. Harris, Alan G. Kjell, Billy J. Kuder, John L. Lewin, Jr., Sam A. Mancinelli, Joseph W. Mooney, Arthur C. Roseberger, Robert R. Stansbury, Richard A. Tufford, Carolyn A. Ward, Thomas W. Ward, George M. Watson, Richard L. Wilson, Joe C. Simpson, George D. Crossett, Bruce C. Daly, Lawrence A. James, Frank B. Lord, Loretta M. Reynolds, Elmer N. Sullivan, Rich Gugger, John R. Hagen, Jimme K. Haile, Archie N. Kaulfuss, James N. Knightstep, Joseph D. Ramirez, Respondents.
Nos. 77-314 through 77-341 and 77-456 through 77-462.
Colorado Court of Appeals, Division III.
August 24, 1978.
Rehearing Denied September 14, 1978.
Certiorari Granted December 4, 1978.
DeMuth & Eiberger, Carl F. Eiberger, Rodney L. Smith, David F. Doubleday, Denver, for petitioner.
*1343 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., John Kezer, Asst. Atty. Gen., Denver, for respondents.
PIERCE, Judge.
The Denver Post, Inc., seeks review of 37 separate decisions of the Industrial Commission, each awarding claimants full unemployment benefits. We affirm in part, reverse in part, and remand with directions.
The Industrial Commission ruled in all these cases that the claimants were unemployed within the meaning of § 8-73-107(1)(c), C.R.S.1973. It further directed that these claimants could satisfy the eligibility requirements of the statute by showing (1) that they had made at least "three attempts to obtain employment each week," or (2) in the case of union members, that they had contacted the union to seek work at least once a week. Most of these cases were then remanded to the referees for factual determinations based upon these criteria. After the findings were made, the Commission ultimately ruled that each of the claimants had met the eligibility requirements of availability and active search and awarded full benefits.
All claimants are "substitute printers" or "substitute stereo typers." "Substitute" employees are hired on a day to day basis according to the newspaper's fluctuating needs, as contrasted with "situation" employees, who are ordinarily full time workers. Under the union contract, substitute stereotypers are hired in the following manner. On any given shift, the employer determines how many stereotypers, if any, will be necessary to supplement the situation workers. The employer then consults the substitute board, upon which the substitute stereotypers have placed their names in a priority predetermined by the union. A substitute stereotyper must be physically present on the employer's premises in order to be hired for that day, and those substitutes who are present are then hired on a seniority basis. This system for hiring substitutes is referred to as the "office hire" system, and all substitute stereotypers are "office hires."
The substitute printers, in addition to being hired on an office hire basis, may also be employed on a "personal hire" basis. Under this system, a situation employee, or a substitute selected for work on that particular day, may assign his employment opportunities that day to a substitute, regardless of the assignee's priority.
Until the early part of 1975, and subject to the usual seasonal fluctuations in the newspaper business, the Post's substitute employees were usually able to work as often as they desired, either at the Post or at the Rocky Mountain News. This stable situation began to change in late 1974. The post-Christmas advertising slump was worse than usual, and a number of situation workers with high priorities were transferred to the substitute list where they assumed seniority positions above those already on the list. Through the winter months, the availability of work continued its downward trend. The situation deteriorated even more when the Rocky Mountain News shut down its stereotyping operations in April of 1975, adding its employees to the already inflated labor pool.
It was during this period of increased unemployment at the two major newspapers in the Denver metropolitan area that most of the claims at issue here were initiated.

I. UNEMPLOYMENT
The threshold issue we must address is whether the Commission erred in finding that the claimants were "unemployed" within the meaning of the unemployment compensation statute. The Post argues that the claimants were never unemployed since their status as substitutes remained unchanged throughout the entire period. We disagree.
The unemployment statute defines unemployment as either "total" or "partial":
"`Partially employed' means an individual whose wages payable to him by his regular employer for any week of less than full-time work are less than the weekly benefit amount he would be entitled to receive if totally unemployed and *1344 eligible . . . ." Section 8-70-103(18), C.R.S.1973.
"`Totally unemployed' means an individual who performs no services in any week with respect to which no wages are payable to him. . . ." Section 8-70-103(21), C.R.S.1973.
Thus, the question of whether a claimant is unemployed in any particular week is a purely mathematical inquiry: If he performs no services and receives no compensation, then he is totally unemployed; if he does receive compensation, but in an amount less than the amount of benefits he could recover if totally unemployed,[1] then he is still unemployed, though only partially. It is only when a claimant receives compensation exceeding the amount of weekly total unemployment benefits that he remains "employed" under these sections. See Industrial Commission Regulation No. 14B, 7 Code Colo. Reg. 1101-2 at p. 12.
We therefore reject the Post's arguments that the statute does not specifically cover the question, and that the employees are only "unemployed" if they have lost rights under their employment contract. Furthermore, contrary to the Post's contentions, this court's decision in Mountain States Telephone & Telegraph Co. v. Department of Labor and Employment, Colo.App., 559 P.2d 252 (1976), is not dispositive. It is true that that case contains broad language which might suggest that the statute does not specifically cover the question of threshold unemployment:
"Thus, whether claimant was `separated from employment' within the meaning of the act is a matter not specifically covered by the statute."
However, the Mountain States panel was addressing the question of whether a person who admittedly is totally or partially unemployed within the meaning of §§ 8-70-103(18) and (21), is also necessarily eligible under § 8-73-107, C.R.S.1973.
Whether the claimant was in fact unemployed was not an issue in Mountain States, and that case is therefore no obstacle to our holding that "unemployment" is solely determined by §§ 8-70-103(18) and (21), C.R. S.1973.
The Post does not contend that any of the claimants who were deemed partially or totally unemployed with respect to any week did in fact earn more than their weekly benefit amount. Moreover, this mathematical determination is within the Commission's expertise, and its conclusions with respect to unemployment, if supported by some evidence, will not be overturned on appellate review. See Industrial Commission v. Bennett, 166 Colo. 101, 441 P.2d 648 (1968). There was a plethora of evidence on each claimant's weekly work history, and we therefore affirm the Commission's finding that each claimant was in fact unemployed, either partially or totally, during the relevant weeks.

II. ELIGIBILITY
The Commission also found that each claimant was eligible during the weeks for which benefits were awarded. Specifically, it found that each claimant had satisfied the eligibility requirements of active search and availability for work contained in § 8-73-107(1)(c) and (g), C.R.S.1973. By its June 30, 1976 order, the Commission determined that the claimants could satisfy the active search and availability requirements either by contacting the union at least once a week, or by making at least three attempts to obtain employment each week, and the findings of eligibility were based on these alternative criteria.
The Post argues that these criteria are insufficient, as a matter of law, to carry out the intent of the General Assembly that benefits be conditioned on a showing that a claimant has made himself available for every reasonable job opportunity. We agree.
Section 8-73-107(1)(g), C.R.S.1973, provides that:
"In determining whether the claimant is actively seeking work, the division, taking *1345 notice of the customary methods of obtaining work in the claimant's usual occupation, or any occupation for which he is reasonably qualified, and the current condition of the labor market, shall consider, but shall not be limited to a consideration of, whether, during said week, the claimant followed a course of action which was reasonably designed to result in his prompt reemployment in suitable work."
The June 30 test applied by the Commission fails to comply with this statutory mandate.
Because of the mechanics of the hiring system, a substitute stereotyper can never know, by only calling the union, whether there is work on any given day. The union official can only speculate as to how many workers will be needed that day, and how many of the substitute office hires will appear for work. The same is true of the printers. While they may also be hired on a personal basis, nothing in any of the records indicates that the union acted as a clearing house for personal hires. Instead, most of the personal hiring was done on a one-to-one basis between employees who were friends, and a weekly call to the union could not affect this system.
Moreover, by the time a substitute responds and presents himself at the newspaper office, co-workers with higher priorities may have appeared and displaced him. And, even assuming that the active search requirement is satisfied by weekly calls, without some indication of the claimant's location when calling, it is impossible to determine whether the claimant was in fact "available." See § 8-73-107(1)(c), C.R.S. 1973.
The alternative "three attempts to obtain employment each week" test, which was further interpreted by the Commission to include appearing at the Post, is also inadequate, without additional findings as to the availability of other suitable work in the Denver area and the claimant's search for such work. See § 8-73-107(1)(g), C.R.S. 1973.
These inadequacies in the June 30 order were magnified by the fact that it was applied across the board to each of the 37 cases, without the case-by-case factual determinations which, in any particular case, may have otherwise supported the Commission's ultimate findings of eligibility. Active search and availability are questions for the Industrial Commission, but they must be answered by reference to the facts and circumstances in each case. Bayly Manufacturing Co. v. Department of Employment, 155 Colo. 433, 395 P.2d 216 (1964); Couchman v. Industrial Commission, 33 Colo.App. 116, 515 P.2d 636 (1973). The Commission cannot short-circuit this requirement of a case-by-case eligibility finding by adopting "standards" or "guidelines" for particular groups of cases.

III. IMPROPER CONTACTS
The Post also alleges that there may have been improper discussions of these cases between certain union officials and members or staff of the Industrial Commission. If these contacts were made, we certainly do not condone them, but a review of the transcripts does not indicate that the Commission's findings of unemployment were in any way affected by any improper communication. Cf. Zuviceh v. Industrial Commission, 37 Colo.App. 249, 544 P.2d 641 (1975).
We affirm the rulings of the Commission on the unemployment issue, but reverse the orders in all 37 cases on the issue of eligibility. The causes are remanded to the Commission with directions to make the necessary findings with respect to the availability and active search issues in each case, and to determine an award in each case based on those findings.
SMITH and KELLY, JJ., concur.
NOTES
[1] The amount of weekly benefits for total unemployment depends on the employee's wages earned over his base period, and is computed according to the formulas in § 8-73-102, C.R.S. 1973.