## No. C-1738

**The Denver Post, Inc., a Colorado corporation v. Department of Labor and Employment, Industrial Commission of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado), and John A. Abell, et al.**

(610 P.2d 1075)

Decided May 12, 1980.

Eiberger, Stacy & Smith, Perry L. Goorman, Carl F. Eiberger, for petitioner.

J. D. MacFarlane, Attorney General, Richard F. Henessey, Deputy, Edward G. Donovan, Solicitor General, David Aschkinasi, Assistant Attorney General, Human Resources Section, for respondents.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

Certiorari was granted to review the decision of the court of appeals in *Denver Post v. Dep't of Labor,* 41 Colo. App. 275, 586 P.2d 1342 (1978), which affirmed the holding of the Industrial Commission of Colorado (commission) that thirty-seven claimants for unemployment compensation benefits were unemployed, either partially or totally, within the meaning of section 8-73-108(1), C.R.S. 1973. We modify the holding of the court of appeals.

This proceeding involves thirty-seven consolidated claims for unemployment compensation benefits by "substitute" printers and stereotypers employed by the *Post.* Although considered employees, who receive employee benefits of medical and life insurance and accrued vacation allowances,[1] the substitutes work only on a day-to-day, shift-by-shift basis.

---

[1] Employees are entitled to one day of vacation for every twenty-five days they work during the year. Under the facts here before us, substitutes apparently did not receive vacation credits for days when they did not work. *See Ind. Comm. v. Sirokman,* 134 Colo. 481, 306 P.2d 669 (1957).

Substitute printers get work in one of two ways: (1) "office hire" — the need of the *Post* for extra printers on a given shift is filled on the basis of seniority from the substitute printers on the premises at the beginning of the shift; or (2) "personal hire" — a printer who is employed for a particular shift can directly designate a substitute without regard to that substitute's seniority.

Substitute stereotypers get work in the following manner: the *Post* notifies the stereotypers' union of its need for substitutes; the union then fills this need first from its regulars and then from its citywide substitute list on the basis of seniority; and stereotypers are informed by the union, in advance of the work shift, that work is available.

I.

The substitutes, who claimed unemployment benefits for the days when they did not work, assert that they were either partially or totally unemployed during the periods at issue. The commission and the court of appeals agreed with their assertion. The *Post* argues that the substitutes, because of their unique employment relationship with the *Post,* were not unemployed within the meaning of the Colorado Employment Security Act, section 8-70-101, *et seq.,* C.R.S. 1973 (the act). Since their status as substitutes was constant throughout the period at issue, the *Post* asserts that they were never partially or totally unemployed. We agree with the *Post's* assertion that the substitutes were never totally unemployed.

The act specifically defines the terms "partially employed" and "totally unemployed." A person is "partially employed" whose "wages payable to him by his regular employer for any week of less than full-time work are less than the weekly benefit amount he would be entitled to receive if totally unemployed and eligible . . . ." Section 8-70-103(18), C.R.S. 1973.

One is "totally unemployed" "who performs no services in any week with respect to which no wages are payable to him. Should such week occur within an established payroll period in which the individual is not totally separated from his regular employer, he shall be deemed *not totally unemployed, but partially unemployed,* as defined in subsection (18) of this section, and subject to the conditions pertaining to partial unemployment." Section 8-70-103(21), C.R.S. 1973. (Emphasis added.) Subsection (21) contemplates that a "partially employed" worker need not be "totally separated from his regular employer."

The court of appeals held that "the question of whether a claimant is unemployed in any particular week is a purely mathematical inquiry: If he performs no services and receives no compensation, then he is totally unemployed . . . ." *Denver Post v. Dep't of Labor, supra. Accord, Trujillo v. Indust. Comm'n,* 42 Colo. App. 401, 594 P.2d 1065 (1979).

Section 8-70-103(21), however, requires a two-step analysis in determining the employment status of a claimant, rather than the single

question posed by the court of appeals. The inquiry into whether the claimant performed services and received compensation in any particular week must be accompanied by a second inquiry: Was the claimant *"totally separated"* from his regular employer during the established payroll period? Even though the claimant performed no services in a week with respect to which no wages were payable to him, if he was not totally separated from his regular employer during the payroll period, then under subsection (21) he was only partially unemployed and subject to the regulations governing partial unemployment.

 **[2]** Because the parties agree that the claimants continued to receive employee benefits during the periods for which they now claim unemployment compensation, the claimants were never separated from employment within the meaning of the statute. The *Post's* reliance on *Mt'n States T & T Co. v. Dep't of Labor,* 38 Colo. App. 298, 559 P.2d 252 (1976), is thus irrelevant to the facts of this case.

█ The *Post* also argues, however, that because the substitutes received employee benefits — medical, life, sickness, and accident insurance, and pension contributions — they were not even partially unemployed but rather were totally employed during the periods at issue. We do not agree. Employee benefits such as those provided by the *Post* are not indicative of an employee's unemployment status under the act. Receipt of such benefits does not constitute wages for purposes of the act. *See* section 8-70-103(22)(a) and (b)(I), C.R.S. 1973.

## II.

█ We agree with the conclusion of the court of appeals that the test applied by the Industrial Commission to determine eligibility for benefits failed to comply with the mandate of section 8-73-107(1)(g), C.R.S. 1973. The commission has an obligation to determine whether a claimant is "able to work and is available for all work deemed suitable . . . ," as provided in section 8-73-107(1)(c), and whether the claimant was "actively seeking work . . . ," as provided in section 8-73-107(1)(g), C.R.S. 1973. Such a determination "must be within the context of the factual situation presented *by each case." Couchman v. Indust. Comm.,* 33 Colo. App. 116, 515 P.2d 636 (1973). (Emphasis added.) *Accord, Medina v. Indust. Comm.,* 38 Colo. App. 256, 554 P.2d 1360 (1973). We agree with the statement of the court of appeals that "[t]he Commission cannot short-circuit this requirement of a case-by-case eligibility finding by adopting 'standards' or 'guidelines' for particular groups of cases." *Denver Post v. Dep't of Labor, supra.* We hold that the terms "able to work," "available for all work deemed suitable," and "actively seeking work" constitute sufficient guidelines to enable the commission to properly determine the eligibility of one seeking unemployment compensation.

We find no merit to petitioner's argument relating to alleged improper ex parte discussions between certain union officers and members or

staff of the commission.

The cause is returned to the court of appeals with directions to remand to the Industrial Commission to conduct further hearings in accordance with the views expressed herein.

JUSTICE ROVIRA does not participate.