**WELD COUNTY KIRBY COMPANY,**
Petitioner,

v.

**INDUSTRIAL COMMISSION of the State of Colorado, (Ex-Officio Unemployment Compensation Commission of Colorado), Colorado Department of Labor and Employment, and Richard L. Zenisek, Respondents.**

No. 83CA0350.

Colorado Court of Appeals,
Div. III.

Dec. 29, 1983.

Eiberger, Stacy & Smith, Perry L. Goorman, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for respondents.

VAN CISE, Judge.

Weld County Kirby Co. (Weld Kirby) seeks review of the final order of the Industrial Commission which held it liable to pay unemployment compensation taxes for Richard Zenisek and others similarly situated. Weld Kirby contends that Zenisek was not an employee, that the referee made improper findings, and that it was denied a fair hearing. We affirm.

Weld Kirby was a sole proprietorship operated by Jim Baker. Weld Kirby purchased Kirby vacuum sweepers from the manufacturer, The Scott and Fetzer Co., then sold them to Zenisek and others. Zenisek, in turn, sold sweepers to the public.

The relationship between Weld Kirby and the salesmen (Dealers) was governed by a contract entitled "Kirby Independent Dealer Agreement." The agreement recited that Weld Kirby was an "authorized distributor" of Kirby products, and bound the Dealers to purchase Kirby products from Weld Kirby. The contract required the Dealers to pay for sweepers within 30 days of purchase but gave them the option of paying in cash or by assigning conditional sales contracts to Weld Kirby. Weld Kirby reserved the right to reject contracts not in conformity with acceptable "payment schedules," or where the purchaser was a poor credit risk. The contract also required Weld Kirby to purchase used sweepers which the Dealers took as trade-ins.

Other contract provisions required Dealers to keep sales records concerning the manufacturer's warranty, and to use the Kirby trademark only "in the name" of Weld Kirby. The contract was terminable at will by either party, and, upon termination, the Dealer was enjoined from representing that he was "affiliated with anyone ... authorized to sell or service Kirby products."

At the hearing, Baker, the owner of Weld Kirby, testified that the Dealers were independent contractors over whom he had no control. He stated that Dealers used their own cars, could work whenever they wanted, were not given sales "leads," and were on Weld Kirby's premises only for initial training and to purchase sweepers. He further stated that there were no reporting requirements for Dealers and that sales receipts were not kept.

Prior to entering its initial order concerning Weld Kirby's tax liability, the Division of Employment and Training asked Baker to submit a written report (F-49), concern-

ing Weld Kirby's relationship with the Dealers. Although the F–49 was not admitted in evidence at the hearing, it was contained in the record and referred to during testimony by the Division's representative.

In the F–49, Baker stated that Dealers were furnished with sales leads, that they reported to Kirby's offices every day, and were provided an "outline" concerning sales procedures. The report further indicated that Dealers were permitted to use Weld Kirby's telephones at no expense to them.

The referee held that Weld Kirby was liable for unemployment taxes because it failed to prove that it does not control and direct the services performed by the Dealers. Section 8–70–103(10)(a)(I), C.R.S.1973. Relying on *Industrial Commission v. Northwestern Mutual Life Insurance Co.,* 103 Colo. 550, 88 P.2d 560 (1939), the referee found that Weld Kirby's right to reject conditional sales contracts created the "possibility of control in the future." Further, contractual control was found in the requirements that Dealers must preserve the Kirby trademark and keep warranty records, and in the provision governing termination. In making his findings, the referee noted the numerous inconsistencies between Baker's testimony and his statements in the F–49. The Commission adopted the findings and conclusions of the referee.

## I.

### A.

Weld Kirby contends that the evidence does not support the conclusion that the Dealers performed a "service" for Weld Kirby and that Weld Kirby controlled and directed the Dealers. Weld Kirby argues that the Dealers were independent contractors.

The pertinent provisions of § 8–70–103(10)(a), C.R.S.1973, defining "employment," provide that:

"[s]ervice performed by an individual for another shall be deemed to be employment irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the division that:

(I) Such individual is free from control and direction in the performance of the service, both under his contract for the performance of service and in fact; and

. . . . .

(III) Such individual is customarily engaged in an independent trade, occupation, profession, or business related to the service performed."

■ In interpreting the statute, the word "service" should be given its ordinary meaning. Section 2–4–101, C.R.S.1973 (1980 Repl.Vol. 1B); *Brannaman v. Richlow Manufacturing Co.,* 106 Colo. 317, 104 P.2d 897 (1940). *Webster's Third International Dictionary* 2075, defines service as "an act done for the benefit or at the command of another."

■ The determination of whether one is acting for the benefit or at the command of another is generally one of fact for the Commission. *Cf. Dailey v. Division of Employment,* 30 Colo.App. 38, 488 P.2d 243 (1971). Here, evidence that Weld Kirby was primarily a distributorship rather than a retail business, that it had "agreements" with several Dealers, and that it provided sales "leads" supports the conclusion that Dealers were acting for the benefit of Weld Kirby. While there was conflicting evidence in this regard, resolution of such conflicts is within the fact-finding authority of the Commission. *McGinn v. Industrial Commission,* 31 Colo.App. 6, 496 P.2d 1080 (1972).

■ Because the Commission properly determined that the Dealers were performing a service, the burden fell on Weld Kirby to show that it did not control and direct the Dealers. Section 8–70–103(10)(a)(I). Once again, determination of the issue is a

factual matter for the Commission. *Industrial Commission v. Northwestern Mutual Life Insurance Co., supra.*

In circumstances similar to those presented here, the Montana Supreme Court upheld an administrative determination that Dealers were controlled and directed by a Kirby distributorship. *Kirby Co. v. Employment Security Division,* 614 P.2d 1040 (Mont.1980). Like the Montana court, we think Weld Kirby's power to terminate the agreement with the Dealers, thereby depriving them of their ability to sell Kirby products, is a particularly strong indicator of control. *Industrial Commission v. Northwestern Mutual Life Insurance Co., supra. See also Auto Damage Appraisers, Inc. v. Industrial Commission,* 666 P.2d 1113 (Colo.App.1983).

■ Other factors indicative of control and direction were the statements in the F–49 that Dealers reported on a daily basis and were provided sales "outlines." Significant contractual provisions included the Dealers' obligation to keep warranty records and to use the Kirby trademark only in the "name" of Weld Kirby. Under these circumstances, the Commission's findings are supported by substantial evidence.

**B.**

Weld Kirby next contends that the evidence demonstrated that the Dealers were engaged in the "independent trade" of selling pursuant to § 8–70–103(10)(a)(III), C.R.S.1973. However, it is unnecessary to consider this argument because we have upheld the Commission's determination that Weld Kirby exercised "control and direction" over the Dealers pursuant to § 8–70–103(10)(a)(I). *Industrial Commission v. Northwestern Mutual Life Insurance Co., supra.*

**C.**

Weld Kirby also argues that the referee erred in relying on *Industrial Commission*

*v. Northwestern Mutual Life Insurance Co., supra* and *Glielmi v. Netherland Dairy Co.,* 254 N.Y. 60, 171 N.E. 906 (1930). We find these arguments without merit except for the following.

At the time our Supreme Court decided *Northwestern Mutual,* the statute defining employment provided that if an individual was providing "service" for an employer, the employer bore the burden to show that the "individual has been and will continue to be free from control." Thus, the Court stated in Northwestern Mutual that the "possibility of control in the future is as important as no actual control in the present."

As Weld Kirby notes, the current statute states that the employer must show the individual *"is* free from control and direction in the performance of the service." Section 8–70–103(10)(a)(I) (emphasis supplied). Thus, Weld Kirby argues that the referee erred in considering "the possibility of" future control, such as Weld Kirby's right to reject sales contracts.

■ However, we agree with the Commission that the General Assembly did not intend to preclude consideration of future control when it made this statutory change. The General Assembly has provided in § 2–4–104, C.R.S.1973 (1980 Repl.Vol. 1B), that "words in the present tense include the future tense." *See People in Interest of D.L.R.,* 638 P.2d 39 (Colo.1981). Thus, the statutory change must be regarded as an attempt to delete verbiage. Further, we recognize that the possibility of future control may alter current behavior.

**II.**

Weld Kirby next contends that the Commission's order is erroneous because incompetent evidence was considered. We consider each allegation in turn.

**A.**

The referee found that Kirby Dealers often tell customers that they must obtain

**1258**

the distributor's approval before a deal is final, and that this was probative of actual control by Weld Kirby. This finding was based on an exchange between the referee and Baker, wherein the referee stated that when he purchased a Kirby the salesman called a superior to get the contract "approved." Baker replied that this was a sales tactic and the salesman was actually "talking to his wife." Baker denied having any actual authority to veto contracts negotiated by Dealers.

Citing *Thompson v. Industrial Commission,* 33 Colo.App. 369, 520 P.2d 139 (1974), Weld Kirby argues that the referee violated due process by injecting personal experience into the proceedings. He argues that he was denied a fair opportunity to cross-examine concerning the "evidence" offered by the referee.

■ Here, Baker admitted that Dealers use the "technique" described by the referee, so cross-examination would have been pointless. Furthermore, the referee allowed Baker to explain he had no actual control over sales by Dealers, and thus, there was a fair opportunity for rebuttal. *See Nesbit v. Industrial Commission,* 43 Colo.App. 398, 607 P.2d 1024 (1979).

■ Weld Kirby further contends that statements made by Dealers to customers were irrelevant since they did not tend to prove actual control by Weld Kirby. We reject this argument in light of other evidence that Weld Kirby permitted its name to appear on Dealers' business cards and by contract required Dealers to use the Kirby trademark in the "name" of Weld Kirby.

### B.

Citing *Wilson v. Industrial Commission,* 30 Colo.App. 154, 490 P.2d 91 (1971), and *Puncec v. City & County of Denver,* 28 Colo.App. 542, 475 P.2d 359 (1970), Weld Kirby contends it was denied due process of law because the F–49 was not admitted into evidence, but was considered by the referee. We reject this contention.

■ Due process requires that the parties be apprised of all evidence to be submitted and considered, that they have the right of cross-examination, and that they be given the opportunity of rebuttal. *Nesbit v. Industrial Commission, supra.*

Here, the F–49 was completed by Baker upon request of the Division and submitted as Weld Kirby's initial statement concerning the claim for unemployment benefits. The F–49 states in heavy black print that the information requested is "for use in obtaining a ruling from the Colorado Division of Employment as to whether or not a worker is an employee for purposes of the Colorado Employment Security Act." Further, the Division's representative testified at the hearing that Weld Kirby's responses on the F–49 were the basis of the initial tax liability determination.

■ Thus, Weld Kirby was aware of the contents and significance of the document submitted by Baker. Under these circumstances Weld Kirby may not claim the protection of the due process clause simply because its own official statements were not formally admitted into evidence. *Cf. New Jersey Fidelity & Plate Glass Insurance Co. v. Patterson,* 86 Colo. 580, 284 P. 334 (1930) (workmen's compensation case).

### C.

After the referee entered his order, but before the Commission entered its initial order, the claimant submitted a handwritten letter to the Commission. He contradicted many of the factual representations made by Baker at the hearing. Citing *Zuviceh v. Industrial Commission,* 37 Colo. App. 249, 544 P.2d 641 (1975), Weld Kirby argues that consideration of this letter constituted a denial of due process.

■ The Commission adopted the findings and conclusions of the referee without

qualification. Consequently, there is no evidence indicating that claimant's letter had any impact on the Commission. *See Denver Post, Inc. v. Department of Labor & Employment,* 41 Colo.App. 275, 586 P.2d 1342 (1978), *modified,* 199 Colo. 466, 610 P.2d 1075 (1980). Thus, there was no denial of due process.

Order affirmed.

STERNBERG and METZGER, JJ., concur.