**RENT–A–MOM, INC., a Colorado corporation, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF the STATE OF COLORADO and Mae Young, Respondents.**

No. 85CA0903.

Colorado Court of Appeals, Div. III.

July 10, 1986.

As Modified on Denial of Rehearing Sept. 18, 1986.

Thomas N. Scheffel & Associates, Bradley S. Abramson, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dani R. Newsum, Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

No appearance for respondent May Young.

METZGER, Judge.

Petitioner, Rent-A-Mom, Inc., seeks review of a final order of the Industrial Commission which held it liable to pay unemployment compensation taxes for workers it referred to perform child care services. We set aside the order.

Rent-A-Mom is engaged in locating temporary and permanent child-sitters (moms) for inquiring clients. The majority of moms are sent on temporary assignments. Upon being contacted by a potential client, Rent-A-Mom ascertains the duties to be performed and the times when the mom is needed and negotiates the rate of compensation. It then obtains a mom by telephoning persons whose names appear on its list of referrals.

The potential moms contacted by Rent-A-Mom are free to accept or to decline the position. If the position is accepted, the mom performs the service in the client's home and, upon completion, receives a check from the client made out to Rent-A-Mom. Thereafter, the mom delivers the check to Rent-A-Mom, who, after deducting a pre-agreed percentage, remits payment for the remainder to the mom.

Each person on Rent-A-Mom's referral list executes a written agreement with Rent-A-Mom. It requires that the mom appear neat and clean, dress accordingly, conduct herself professionally, make no personal telephone calls and have no visitors without the client's permission, maintain automobile insurance, and refrain from handling personal belongings of the client. It also requires the mom to contact Rent-A-Mom if a client attempts to negotiate a mom's services without making prior arrangements with Rent-A-Mom. Both the mom and Rent-A-Mom may terminate the contract at any time. The contract specifically provides that the moms are independent contractors and, thus, are not employees of Rent-A-Mom.

At a hearing held to determine Rent-A-Mom's unemployment tax liability for moms, James Kone, its president, testified at length. In support of his assertion that the moms were independent contractors rather than employees, he testified that the moms were free from control in the manner in which duties were carried out, and that they received no training, guidelines, materials, or tools from Rent-A-Mom. Kone also testified that, based upon the responses to a recently conducted survey, eighty percent of the moms were engaged in independent child care services for other agencies and/or clients while remaining on Rent-A-Mom's list of referrals. Moms were also given freedom to negotiate a higher fee with clients who wished additional services to be performed.

The referee found from the evidence that Rent-A-Mom did not act to control its moms, and each mom was free to engage in independent child care services without Rent-A-Mom's permission. The referee concluded that the moms were not participating in covered employment. Thereafter, the Division of Employment and Training

filed for review, and the Industrial Commission reversed.

Relying on *Industrial Commission v. Northwestern Mutual Life Insurance Co.,* 103 Colo. 550, 88 P.2d 560 (1939) (*Northwestern*) and *Weld County Kirby Co. v. Industrial Commission,* 676 P.2d 1253 (Colo.App.1983) (*Weld County Kirby*), the Commission found that Rent-A-Mom's right to terminate the moms, and the provisions in the written contract the moms were obligated to sign, evidenced Rent-A-Mom's right to control, as defined in § 8–70–103(10)(a)(I), C.R.S. The Commission also found that Rent-A-Mom had failed to establish that the moms were customarily engaged in an independent trade, occupation, profession, or business related to the service performed, as required by § 8–70–103(10)(a)(III), C.R.S. (1985 Cum.Supp.). Accordingly, it concluded that "the evidence established that the employer is a temporary labor agency that provides workers to its customers for the performance of specific services for a fee that is paid by the customer, ..." and that, therefore, Rent-A-Mom was subject to the provisions of the Colorado Employment Security Act.

Rent-A-Mom contends that the Commission erred in concluding that the moms were under its control and direction, and were not engaged in an independent trade. We agree.

Section 8–70–103(10)(a), C.R.S. (1985 Cum.Supp.) provides:

"[S]ervice performed by an individual for another shall be deemed to be employment, irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the division that: (I) Such individual is free from control and direction in the performance of the service, both under his contract for the performance of service and in fact; ... *and*

. . . .

[Subsection II repealed Colo.Sess.Laws 1976 § 22 at 352, effective Oct. 1, 1974]

. . . .

(III) Such individual is customarily engaged in an independent trade, occupation, profession, or business related to the service performed." (emphasis added)

The determination whether an employer has met its burden of proving the conjunctive requirements of § 8–70–103(10)(a)(I) and (III) is a question of fact. *See Wagner & Sons Construction, Inc. v. Pagels,* 720 P.2d 987 (Colo.App.1986); *Weld County Kirby, supra.* The Commission's order may be set aside if there is no substantial evidence to support it. *See Diamond Circle Corp. v. Blocher,* 691 P.2d 769 (Colo.App.1984); *Stern v. Industrial Commission,* 667 P.2d 244 (Colo.App.1983).

### A.

### Section 103(10)(a)(I)

The terms "control and direction" in § 8–70–103(10)(a)(I), C.R.S. mean an overall right to control the actions of an employee. *Northwestern, supra.* While an employer's right to terminate the relationship is one factor to be considered in determining this control, it cannot be the sole factor in reaching the conclusion that an employment relationship exists. *See Northwestern, supra; Weld County Kirby, supra.*

We conclude that the Commission erred in relying on *Northwestern* and *Weld County Kirby* for its conclusion that the power to terminate the employment relationship without liability is a strong indicator of the employer's control over the individual's performance of such services. These cases do not stand for that proposition.

In both *Northwestern* and *Weld County Kirby,* the power to terminate was only one of several factors the court considered in determining that an employer-employee relationship existed. In *Northwestern,* the contract referred to definite rules by which each detail of performance would be carried to completion, including exclusive use

of the employer's material for selling and advertising, and the employer's control of the workers' selection and pre-sale investigation of prospective customers and the method employed in interviewing those prospects. As well, each worker was specifically prohibited from engaging in any other businesses or working for any other insurance company.

In *Weld County Kirby,* a similar pattern of detailed control obtained. Kirby retained the authority to reject sales contracts procured by the workers, required the workers to keep detailed sales records, and required the workers to report to the office daily.

■ These factors evidence the employer's firm hand in controlling the details of the manner and method of job performance. In contrast, Rent-A-Mom's contract is conspicuously silent on the issue of the manner or method of job performance. Rather, it speaks only to such generalities as neatness in dress and manner, professional attitude (*i.e.,* no personal telephone calls or visitors without the client's permission), and refraining from handling a client's personal belongings. Thus, while Rent-A-Mom retained the right to terminate the moms, the contract includes only provisions relating to hygiene and employee etiquette which in no way direct or control the mom's performance of even the most general tasks involved in child-sitting.

These vague generalities fall far short of the stringent job performance requirements of *Northwestern* and *Weld County Kirby* and do not evidence a general right to control the moms' actions.

Consequently, we hold that Rent-A-Mom's right to terminate its contract with its moms is an insufficient evidentiary premise upon which to base a conclusion that Rent-A-Mom had not demonstrated that it fell within the ambit of § 103(10)(a)(I). Thus, there being no other evidentiary support for the Commission's conclusion, that conclusion may not stand.

B.

## Section 103(10)(a)(III)

With respect to § 103(10)(a)(III), Rent-A-Mom has the burden of showing that the moms are customarily engaged in the trade or business of providing child care services independent of whatever connection they may have with the company. *See Northwestern, supra.*

■ Rent-A-Mom offered uncontradicted evidence of its survey showing that over 80 percent of the moms customarily performed child care services independently of Rent-A-Mom. Moreover, its accountant testified that Rent-A-Mom's mom list includes 200 to 300 persons and, for its four years of existence, it has never had a mom receive as much as $600 per year from Rent-A-Mom. No evidence contrary to these survey results was presented.

The survey evidence constitutes a prima facie showing by Rent-A-Mom that its moms were engaged in the independent trade or business of providing child care services as contemplated by the statute. Hence, since the Industrial Commission finding to the contrary is without any evidentiary support, it cannot stand.

The order is set aside and the cause is remanded for entry of an order that Rent-A-Mom, Inc., is not obligated to pay unemployment taxes for persons on its referral list.

VAN CISE and KELLY, JJ., concur.