COLORADO COURT OF APPEALS                                   **2016COA172**

Court of Appeals No. 16CA0369
Industrial Claim Appeals Office of the State of Colorado
DD No. 20749-2015

Lizabeth A. Meyer,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Division of
Unemployment Insurance, Benefit Payment Control,

Respondents.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE DAILEY
Taubman and Freyre, JJ., concur

Announced November 17, 2016

Law Office of Warren Domangue, Warren Domangue, Lakewood, Colorado, for
Petitioner

Cynthia H. Coffman, Attorney General, Evan Brennan, Assistant Attorney
General, Denver, Colorado, for Respondent Industrial Claim Appeals Office

No Appearance for Respondent Division of Unemployment Insurance, Benefit
Payment Control

¶ 1     In this unemployment compensation benefits case, petitioner, Lizabeth A. Meyer (claimant), seeks review of a final order of the Industrial Claim Appeals Office (Panel).  The Panel upheld a hearing officer's decision that claimant had received an overpayment of unemployment compensation benefits because of unreported earnings from her employment.  The Panel also upheld the imposition of monetary penalties against claimant.  We affirm the Panel's order in part, reverse in part, and remand the case for entry of a new order.

*I.  Factual and Procedural Background*

¶ 2     Claimant filed an unemployment compensation benefits claim with an effective date of March 11, 2012.  Following that date, claimant worked part-time as a sales associate, and, in May 2012, she obtained full-time work as a controller for another company.

¶ 3     A deputy for the Division of Unemployment Insurance (Division) conducted an audit of claimant's file and determined that she had been overpaid unemployment compensation benefits in the amount of $1712 for the period from March 18, 2012, through May 19, 2012.  The deputy found that claimant had underreported her hours and earnings for certain weeks during that period.  The

deputy also assessed a monetary penalty of $1112.80 against claimant.

¶ 4    Claimant appealed the deputy's determination and an evidentiary hearing was conducted. At the hearing, claimant conceded that the hours reported on her paystubs, rather than the ones she reported online to the Division, accurately reflected the hours she had worked. She asserted, however, that she was required only to report her taxable, rather than gross, earnings to the Division.

¶ 5    The hearing officer accepted, except for one week, claimant's concessions regarding the number of hours she had worked after applying for unemployment compensation benefits. The hearing officer concluded, however, that claimant had been instructed to report accurately her gross earnings and hours for each benefit week to the Division. Claimant had also been advised that giving false information in her request for payment constituted fraud.

¶ 6    The hearing officer found that claimant knowingly misreported her gross earnings and hours for certain weeks which resulted in her being overpaid $1890.64 in unemployment compensation benefits. The hearing officer also rejected claimant's explanations

regarding the method she used to report her hours and earnings and found that her misreporting was willful. The hearing officer consequently assessed a monetary penalty of $1228.91.

¶ 7     Claimant appealed the hearing officer's decision to the Panel, which affirmed on review.

¶ 8     Claimant then brought this appeal. After the case was at issue, we requested that the parties address the following question:

> Whether any payment made to or on behalf of an employee or his beneficiary under a cafeteria plan (within the meaning of 26 U.S.C. section 125), as specified under section 8-70-142(1)(c)(VIII), C.R.S. 2015, affects the amount of wages a claimant must report as his or her earnings when filing a claim for unemployment benefits?

## II.  Standard of Review

¶ 9     We may set aside the Panel's decision if the findings of fact do not support the decision or the decision is erroneous as a matter of law. *See* § 8-74-107(6), C.R.S. 2016; *Colo. Div. of Emp't & Training v. Parkview Episcopal Hosp.*, 725 P.2d 787, 790 (Colo. 1986).

## III.  Reportable Earnings; Wages

¶ 10     Claimant contends that the Panel erred in determining that she was required to report her gross earnings instead of her taxable

earnings. Relying on section 8-70-142, C.R.S. 2016, claimant asserts that she was not required to report as earnings any contributions she made to her 26 U.S.C. section 125 (2012) cafeteria plan. We agree with claimant that the term "wages" excludes any contributions she made to a section 125 cafeteria plan.

## A. Legal Framework

¶ 11 Section 8-70-142 identifies what types of remuneration are not included as "wages." As pertinent here, section 8-70-142(1)(c)(VIII) excludes "[a]ny payment made to or on behalf of an employee or his beneficiary . . . [u]nder a cafeteria plan (within the meaning of 26 U.S.C. section 125)."

¶ 12 A cafeteria plan allows an employer to offer its employees a variety of benefits that may include tax advantages. *See* 26 U.S.C. §§ 3121(a)(5)(G), 3306(b)(5)(G) (2012); *Lee v. Emp't Dep't*, 190 P.3d 453, 453 (Or. Ct. App. 2008). Contributions to a cafeteria plan by an employer can be made through a salary reduction agreement with an employee in which the employee agrees to contribute a portion of his or her salary on a pretax basis to pay for the benefits. *Id.* These contributions are not considered wages for federal income

tax purposes and are not subject to Social Security and federal unemployment taxes. *Id.*

### B. The Division's Arguments

¶ 13 In its supplemental brief, the Division acknowledges that the term "wages," as defined in section 8-70-142, excludes any contributions made to a section 125 plan. However, without specifically addressing the effect of this provision, the Division argues that claimant failed to present sufficient evidence that the cafeteria plan to which she contributed met the requirements for a section 125 plan. The Division also argues that it properly determined that clamant was responsible for the overpayment because she willfully misrepresented her earnings and the number of hours she worked for the nine-week period at issue.

### C. Division Instructions Regarding Reportable Wages

¶ 14 During the hearing, the Division presented copies of online forms claimant filled out in order to receive unemployment compensation benefits. These forms requested claimant to list the number of hours she worked during the week and the amount that she was paid or would be paid. The forms also contained a "certification agreement," which specified that claimant understood

5

that "[i]f I work during any week for which I am claiming UI benefits, I must report all *gross earnings* in the week earned regardless of whether or not I have been paid." (Emphasis added.)

¶ 15    The requirement to report "gross earnings" is repeated in an administrative regulation. *See* Dep't of Labor & Emp't Reg. 2.9.2, 7 Code Colo. Regs. 1101-2:2.9. This regulation, which is entitled, "Disqualifying Payments," provides as follows:

> For the purposes of determining weekly benefits, "wages/earnings" is defined as any income or remuneration received in exchange for services performed, including amounts that have been deducted under a plan for tax exemption or deferral.

*Id.*

¶ 16    Thus, through this regulation, as well as the directions in the online forms, the Division has required that a claimant report his or her gross earnings for each week in which the claimant sought unemployment compensation benefits. However, this requirement is contrary to the plain language of the statute, which excludes from the definition of "wages" certain contributions to a section 125 cafeteria plan. *See also* § 8-73-107(1)(f), C.R.S. 2016 (providing that a claimant is ineligible to receive unemployment compensation

benefits for any week unless the claimant's "total wages earned" are less than the weekly benefit amount).

¶ 17     We therefore conclude that the Division erred in requiring claimant to report her "gross earnings" rather than her "wages" as defined by section 8-70-142 when reporting her "earnings" to the Division during a benefit week.

*D. Evidence Regarding Section 125 Contributions*

¶ 18     We also conclude that there was sufficient evidence to show that claimant contributed to a section 125 cafeteria plan for unemployment purposes.

¶ 19     The administrative record included copies of claimant's paystubs during the relevant nine-week period. Claimant's paystubs from Coach, from the period from March 11, 2012, through May 17, 2012, showed that she paid medical, dental, vision, and FSA benefits using pretax earnings. These paystubs also showed "FIT Taxable Wages," which equaled claimant's gross earnings minus her pretax contributions. A paystub from claimant's other employer during this period (Sutrak), from May 6, 2012, through May 21, 2012, did not show any pretax deductions.

¶ 20    In addressing whether claimant's paystubs showed any section 125 deductions, the Panel stated that they had not been admitted as exhibits.  However, that determination is incorrect.  The record shows that the hearing officer accepted the Division's submission of the paystubs into evidence and that claimant testified about them extensively.  Consequently, we also disagree with the Panel's statements that claimant only generally testified about the deductions on her paystubs and that it was not clear from her testimony whether the deductions met the requirements of "26 U.S.C. 3306(b)(5)(G) and 26 U.S.C. § 125."  However, claimant's paystubs from Coach show that her federal taxable earnings were reduced by the amount of her pretax contributions for medical, dental, vision, and FSA benefits.  Such deductions are characteristic of section 125 cafeteria plans.  *See Lee*, 190 P.3d at 453; *see also Denver Post, Inc. v. Dep't of Labor & Emp't*, 199 Colo. 466, 469, 610 P.2d 1075, 1077 (1980) (employee benefits in the form of medical, life, sickness, accident insurance, and pension contributions did not constitute wages for unemployment purposes); *City & Cty. of Denver v. Indus. Comm'n*, 707 P.2d 1008, 1010 (Colo. App. 1985) (payments made to police officers on

8

account of accident disability were not counted as wages for determining monetary eligibility for unemployment compensation benefits).

¶ 21    Therefore, based on the foregoing and the fact that unemployment compensation benefit hearings are to be expedited proceedings, we conclude that claimant met her burden to establish that the amounts she paid for these benefits while working for Coach were excludable from her "wages" under section 8-70-142(1)(c)(VIII). *See Campbell v. Indus. Claim Appeals Office*, 97 P.3d 204, 210-11 (Colo. App. 2003) (recognizing that unemployment compensation hearings are intended to be informal and expeditious, and it would impose an onerous burden on an employee to present evidence that is not directly relevant to the circumstances of his or her separation from employment); *Ward v. Indus. Claim Appeals Office*, 916 P.2d 605, 607 (Colo. App. 1995) (in an unemployment compensation proceeding, the initial burden is on the claimant to establish a prima facie case of entitlement).

### IV.  Eligibility; Overpayment; Penalty

¶ 22    Claimant next contends that the Panel erred in upholding the hearing officer's determination that she knowingly failed to report

her earnings accurately and that both the hearing officer and Panel erred in determining that she had received an overpayment and in imposing a monetary penalty. We agree in part.

### A. Legal Framework

¶ 23 Section 8-73-107(1)(f) provides that a claimant is ineligible to receive unemployment compensation benefits for any week in which the "total wages earned" for the week exceed the weekly benefit amount. In addition, if the claimant's earnings are less than the weekly benefit amount, section 8-73-102(4), C.R.S. 2016, requires that a claimant's weekly benefit amount be reduced by the amount by which the "wages payable" to the claimant for a particular week exceed twenty-five percent of the weekly benefit amount. Further, a claimant is not entitled to unemployment compensation benefits if fully employed, which equates to thirty-two or more hours per week. *See* § 8-70-103(12.5), C.R.S. 2016 (definition of "fully employed"); *see also* § 8-70-103(19) (definition of "partially employed").

¶ 24 The Division is required to recover any unemployment compensation benefits a claimant receives due to fraud. *See* § 8-74-109(2), C.R.S. 2016; *see also* Dep't of Labor & Emp't Regs. 15.1.3, 15.2, 7 Code Colo. Regs. 1101-2:15 (allowing for the write

10

off or waiver of overpaid benefits in certain circumstances). Colorado regulations consider it a "false representation" when an individual makes a report "that he or she knew to be false or any representation made by an individual with an awareness that he or she did not know whether the representation was true or false." *See* Dep't of Labor & Emp't Reg. 15.2.5, 7 Code Colo. Regs. 1101-2:15.2.5.

¶ 25    Section 8-81-101(4)(a)(II), C.R.S. 2016, imposes a monetary penalty of sixty-five percent of the overpayment amount if the overpayment resulted from the claimant's "false representation" or "willful failure to disclose a material fact." *See Woollems v. Indus. Claim Appeals Office*, 43 P.3d 725, 726 (Colo. App. 2001). This statutory standard does not require an intent to defraud, but rather is met when the false representation is made or the failure to disclose is done "knowingly." *See Div. of Emp't & Training v. Indus. Comm'n*, 706 P.2d 433, 435 (Colo. App. 1985). In addition, Regulation 15.2.6 defines a "willful failure to disclose a material fact" as "knowingly withholding material information from the division." Dep't of Labor & Emp't Reg. 15.2.6, 7 Code Colo. Regs. 1101-2:15.2.6. A claimant's mental state may be inferred from

11

circumstantial evidence. *See Div. of Emp't & Training*, 706 P.2d at 435.

### B. Application to This Case

### 1. Sutrak Earnings

¶ 26    Initially, we need not consider whether the earnings claimant reported for Sutrak were considered "taxable wages" or "gross earnings" because claimant was not otherwise eligible for unemployment compensation benefits for the period she worked for Sutrak.

¶ 27    The hearing officer found, and the record supports, that claimant worked over thirty-two hours per week for Sutrak during the period from May 6, 2012, through May 21, 2012. In addition, claimant's income during those weeks exceeded the amount that claimant received in unemployment compensation benefits. Thus, although claimant received unemployment compensation benefits of $500 a week for the two weeks she worked for Sutrak, she was ineligible to receive these benefits based on her weekly earnings, which exceeded $1000 per week, for which no pretax deductions were taken, and because she worked full-time during this period. *See* §§ 8-70-103(12.5), (19); 8-73-107(1)(f).

¶ 28    Therefore, we conclude that the Division properly determined claimant was overpaid $1000 in unemployment compensation benefits for the two-week period from May 6, 2012, through May 21, 2012.  We also conclude that the Division did not err in upholding the imposition of a sixty-five percent penalty ($650) for this period. As the hearing officer determined, with record support, claimant knowingly underreported her hours and earnings for this period.

### 2.  Coach Earnings

¶ 29    In contrast, claimant's paystubs from Coach showed that she did not work more than thirty-two hours in any week.  In addition, the amounts she reported as "wages" for those weeks were less than her benefit amount.  Thus, we conclude that claimant was not automatically ineligible from receiving unemployment compensation benefits for the weeks she worked exclusively for Coach and therefore we need to consider what her "taxable wages" were for this period.

¶ 30    The hearing officer prepared a table which showed the difference between what claimant reported in earnings and the amount of "taxable wages" that was shown on her paystubs.  Based on that table, we may calculate the amount claimant was overpaid

by using the formula set forth in section 8-73-102(4). This formula requires a deduction from the weekly benefit amount of any wages that are in excess of twenty-five percent of the weekly benefit amount.

¶ 31    The Division calculated claimant's weekly benefit amount as $500. Thus, the maximum wages claimant could earn in any week without a deduction was $125. Using this information, the following chart shows claimant's "taxable earnings," her reported earnings, unemployment compensation benefits paid, and any overpayment for each week she worked exclusively for Coach.

| Week Ending | Taxable Wages | Reported Wages | Benefits Paid | Overpayment Amount |
|---|---|---|---|---|
| 3/24/12 | $165.00 | $75.87 | $500.00 | $40.00 |
| 3/31/12 | $160.69 | $160.69 | $464.00 | $0.00 |
| 4/7/12 | $165.71 | $160.69 | $464.00 | $5.00 |
| 4/14/12 | $95.49 | $165.71 | $459.00 | ($41.00) |
| 4/21/12 | $161.32 | $95.49 | $500.00 | $37.00 |
| 4/28/12 | $158.56 | $165.00 | $460.00 | ($6.00) |
| 5/5/12 | $165.46 | $125.00 | $500.00 | $41.00 |
| | | | Total | $76.00 |

¶ 32    The hearing officer, in determining that claimant had been overpaid benefits, did not calculate the overpayment based on claimant's "taxable wages," but rather on her gross earnings. As is

14

apparent, if "taxable wages" are used, the amount that claimant was overpaid is substantially less than the amount calculated by the hearing officer, only $76 versus $890.64.

¶ 33 Nevertheless, in imposing a monetary penalty, the hearing officer found that claimant knowingly misreported her earnings and hours for these weeks. Although the hearing officer found that claimant misreported her earnings based on the difference between her gross earnings and the "taxable wages" she reported to the Division, the hearing officer also found that claimant reported working only 84 hours when she actually worked 153 hours during that period. The hearing officer further found that claimant was aware of her obligation to report her earnings and hours accurately and deliberately failed to do so. Moreover, the hearing officer noted that even if the hearing officer accepted claimant's argument that she was to report only her "taxable earning," she failed to do that.

¶ 34 Accordingly, in light of the foregoing, we conclude that the hearing officer did not err in concluding that a monetary penalty was appropriate. However, because claimant was overpaid only $76 in unemployment compensation benefits for this period, the sixty-five percent monetary penalty is only $49.40, for a total of $125.40.

## V. Continuance of Hearing

¶ 35    Claimant further contends that her due process rights were violated because the hearing officer erred in not continuing the hearing so that she could submit a document showing that cafeteria plan deductions were not considered wages for purposes of unemployment. However, we conclude that this contention is moot, and we need not address it, based on our determination that the hearing officer erred in not using claimant's "taxable wages" in determining whether she had been overpaid unemployment compensation benefits during the period she exclusively worked for Coach.

## VI. Conclusion

¶ 36    We affirm that part of the Panel's order holding that claimant was overpaid $1000 in unemployment compensation benefits for the two-week period she worked for Sutrak. We also affirm the imposition of a sixty-five percent monetary penalty, in the amount of $650, for this period. We reverse that part of the Panel's order holding that claimant was overpaid $890.64 in benefits for the period she worked exclusively for Coach, as well as the imposition of a sixty-five percent monetary penalty on this amount, and

16

remand this issue to the Panel with directions to enter a new order holding that claimant was overpaid $76 in benefits for this period and imposing a sixty-five percent penalty of $49.40, for a total payment of $125.40.

JUDGE TAUBMAN and JUDGE FREYRE concur.