895 P.2d 555

**Mary Catherine SCRIVNER, SSN: 544–48–3006, Claimant–Appellant,**

v.

**SERVICE IDA CORPORATION, dba Manpower Temporary Services, Employer, Defendant,**

and

**State of Idaho, Department of Employment, Defendant–Respondent.**

No. 21062.

Supreme Court of Idaho, Boise, January 1995 Term.

May 22, 1995.

Penland & Munther, Boise, for claimant-appellant. Merrily Munther argued.

Alan G. Lance, Atty. Gen., and Evelyn B. Thomas, Deputy Atty. Gen., Boise, for defendant-respondent. Evelyn B. Thomas argued.

McDEVITT, Chief Justice.

## I.

## BACKGROUND

The facts of this case, as found by the Department of Employment appeals examiner (appeals examiner), and adopted by the Industrial Commission (the Commission), are as follows.

The appellant, Mary Catherine Scrivner (Scrivner), worked as an office manager for a temporary services agency from May 1977 until the end of April 1992. She became a part owner of the business when she married the owner in March 1980. The couple was divorced in April 1988, however Scrivner's employment with, and co-ownership of, the business continued for another four years.

Scrivner, who was remarried in December 1991, terminated her employment as office manager of the temporary services agency in late April 1992, due to difficulties with her former husband in the work environment following her remarriage. Scrivner was also upset by allegations that her former husband had sexually abused her grandson, which allegations were later determined unfounded.

Upon terminating her position, Scrivner sold her shares of the business to her former husband due to her concern that the sexual abuse allegations against her former husband might have a negative effect on the business if the charges reached the media. At the time she terminated her employment, her annual salary was between $36,000 and $40,-000.

On approximately the first of August 1992,[1] Scrivner obtained her realtor's license

---

1. In Finding of Fact No. 10, as found by the appeals examiner and as modified by the Commission, the stated date is April 1, 1992. Howev-

er, Scrivner's uncontroverted testimony, at p. 84, L. 14 through p. 85, L. 18 of the hearing transcript, places the date around the first of August,

so that she could answer questions from her husband's real estate clients during evenings or weekends when he was unavailable.[2] Although Scrivner never intended to sell real estate herself, her license authorizes her to sell real estate under the direction of the broker for whom her husband works.

In August 1992, Scrivner filed an application for unemployment insurance benefits. Scrivner was found ineligible for benefits in a Department of Employment (Department) claim determination dated August 27, 1992. The determination was based on the fact that she was a licensed realtor at the time she applied for benefits, could control her own hours, and could choose whether to work part-time or full-time. In addition, the claims examiner determined that Scrivner had not established the existence of good cause for voluntarily terminating her employment.

Scrivner filed a request for a redetermination on September 15, 1992. On redetermination, the department claims examiner concluded that Scrivner had terminated her employment for good cause due to problems which arose in her working relationship with her former husband following her remarriage. Thus, the claims examiner concluded, the employer's account would be chargeable for ratings purposes for any benefits paid to Scrivner. However, the claims examiner also concluded that, because Scrivner could be employed full-time as a realtor at her election, she was not unemployed within the meaning of Idaho's Employment Security Law.

The employer and Scrivner filed timely objections. The employer challenged the claims examiner's finding that Scrivner voluntarily quit her job for good cause and that the employer's account was therefore chargeable. Scrivner challenged the claim examin-

er's finding that she was ineligible for benefits because she could work full-time as a realtor but chose not to.

A hearing was held October 27, 1992, before a department hearing officer sitting as an appeals examiner. The hearing officer also exercised jurisdiction over the question of whether Scrivner's principal occupation was in self-employment.

On November 20, 1992, the appeals examiner reversed the claims examiner's eligibility redetermination. In particular, the appeals examiner ruled that a preponderance of the evidence in the record established that Scrivner is unemployed and her principal occupation is not that of self-employment. However, the appeals examiner also ruled that Scrivner had not shown by a preponderance of the evidence that she was compelled to terminate her employment for work-related reasons, and therefore the employer's account was not chargeable for experience rating purposes.

Scrivner filed a Notice of Appeal with the Commission on December 4, 1992. While Scrivner's notice of appeal did not purport to limit the scope of the Commission's review of the appeals examiner's decision, in her brief on appeal Scrivner stated that she was appealing the decision of the appeals examiner only as to the determination that she was ineligible for unemployment benefits because of her failure to establish that she had left work voluntarily with good cause relative to her work conditions.

The Commission reviewed the appeals examiner's entire decision, based on a *de novo* review of the record, pursuant to I.C. § 72–1368(g)[3] and *In re Guajardo*, 119 Idaho 639, 809 P.2d 500 (1991).

The Commission adopted the appeals examiner's findings of facts, with the exception

1992. Thus, it appears the April 1 date is a transcription error and should instead read: "August 1, 1992."

**2.** Scrivner believed that she was prohibited by law from providing information on real estate listings to her husband's clients unless she was licensed. [Tr. p. 85 L. 9 through p. 86 L. 2].

**3.** I.C. § 72–1368(g) provides:

**72–1368. Claims for benefits and appellate procedure.—**

. . . .

(g) The commission shall decide all claims for a review filed by any interested party in accordance with its own rules of procedure not in conflict herewith. The record before the commission shall consist of the record of proceedings before the appeals examiner, unless it appears to the commission that the interests of justice require that the interested parties be permitted to present additional evidence. In that event, the commission may, in its sole discretion, conduct a hearing to receive additional evidence or may

of Finding of Fact No. 10 for which the Commission substituted its own finding. The Commission set forth its own conclusions of law:

1) Scrivner established good cause for voluntarily terminating her employment with the temporary services agency

2) Scrivner is ineligible for benefits because she was not "unemployed" as defined by I.C. § 72–1312 and 72–1366.[4]

3) Because Scrivner is ineligible for benefits, the employer's account is not chargeable for experience rating purposes.

Because the Commission concluded Scrivner was not unemployed for benefit eligibility purposes, it declined to reach the issue of whether she was self-employed.

Scrivner filed a Motion for Reconsideration, in which she argued that: (1) there was no evidence in the record that she had been offered work as a realtor, nor that she had been directed to look for work as a realtor; (2) that work as a realtor is not "suitable" for her within the meaning I.C. § 72–1366(g); [5] and (3) even if the work as a realtor is deemed suitable, she had good cause for not pursuing work in that field with the same broker who employed her husband.

The Commission entered its Order on Motion for Reconsideration on December 2, 1993. In that order, the Commission amended its previous findings of fact with the addition of Finding of Fact No. 11:

Claimant was seeking work primarily between the hours of 8:00 a.m. and 5:00 p.m., Monday through Friday.

The Commission then concluded that, because Scrivner had received training as a real estate professional, had a license to sell real estate, and worked approximately ten

refer the matter back to the appeals examiner for an additional hearing and decision. On the basis of the record of proceedings before the appeals examiner as well as any additional evidence, if allowed, the commission shall affirm, reverse, modify, set aside or revise the decision of the appeals examiner or may refer the matter back to the appeals examiner for further proceedings. The commission shall file its decision and shall promptly serve notice of its decision to all interested parties. A decision of the commission shall be final and conclusive as to all matters adjudicated by the commission upon filing the decision in the office of the commission; provided, within twenty (20) days from the date of filing the decision, any party may move for reconsideration of the decision or the commission may rehear or reconsider its decision on its own initiative, and in any such event the decision shall be final upon denial of a motion for rehearing or reconsideration or the filing of the decision on reconsideration.

4. I.C. § 72–1312 and § 72–1366 provide in relevant part:

**72–1312. Compensable week.**—(a) A week of unemployment with respect to which an eligible benefit claimant shall be entitled to benefits shall be known as a compensable week; ....

(b) A compensable week of a benefit claimant shall be a week of either no work or less than full-time work—

....

(3) in which he complied with all of the personal eligibility conditions prescribed in section 72–1366, Idaho Code;

**72–1366. Personal eligibility conditions.**—The personal eligibility conditions of a benefit claimant are that—

....

(d) During the whole of any week with respect to which he claims benefits or credits to his waiting period he was able to work, available for suitable work, and seeking work; ....

....

(f) His unemployment is not due to his failure without good cause to apply for available suitable work or to accept suitable work when offered to him. ...

5. I.C. § 72–1366(g) provides:

**72–1366. Personal eligibility conditions.**—The personal eligibility conditions of a benefit claimant are that—

....

(g) In determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, and other pertinent factors shall be considered. No employment shall, in any event, be deemed suitable and benefits shall not be denied to any otherwise eligible individual for refusing to accept new work or to hold himself available for work under any of the following conditions:

....

(2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered;

....

hours a week assisting her husband in his real estate sales efforts, employment as a real estate professional was suitable for her. In reaching its conclusion, based on I.C. § 72–1366(g), the Commission noted that the record was devoid of any indication that Scrivner's health, safety, morals, or physical fitness would be at risk, that she would be forced to commute an unreasonable distance, or that her potential earnings as a real estate professional would be significantly different than the salary she had earned in her customary occupation as an office manager.

The Commission further concluded that Scrivner's desire to limit her search to work available from 8 a.m. to 5 p.m., Monday through Friday in an office environment, coupled with her desire to not work full-time as a real estate professional, amounted to self-imposed conditions which rendered her unavailable for employment, and thus barred her recovery of compensation benefits pursuant to Department rules.[6]

Finally, the Commission concluded that, because Scrivner had testified that her real estate broker probably would not have any objections to her working full-time if she asked, Scrivner had not met her continuing duty to inquire of prospective employers for work that she is capable of performing, pursuant to *Hudson v. Hecla Mining Co.*, 86 Idaho 447, 387 P.2d 893 (1963).

## II.

## ANALYSIS

A. The Industrial Commission may base its decision on issues not raised in the claim for review.

In *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 787 P.2d 263 (1990), this Court

held that I.C. § 72–1368(g) provides for *de novo* review by the Industrial Commission of an unemployment insurance benefits claim, based on the record of the proceedings before the appeals examiner. *Id.* at 279, 787 P.2d at 265. The Court has subsequently affirmed that this is the appropriate standard of review, most recently in *DesFosses v. State Dep't of Employment*, 123 Idaho 746, 748, 852 P.2d 498, 500 (1993).

This Court expounded on the scope of *de novo* appellate review in *Beker Indus., Inc. v. Georgetown Irr. Dist.*, 101 Idaho 187, 610 P.2d 546 (1980):

> The term "de novo" generally means a new hearing or a hearing for the second time, contemplating an entire trial in the same manner in which the matter was heard and a review of previous hearing. [Citation omitted]. On such a hearing the court hears the matter as a court of original and not appellate jurisdiction.

*Id.* at 190, 610 P.2d at 549.

Scrivner argues that the Commission's *de novo* review of the appeals examiner's entire decision conflicts with the conclusiveness provisions of I.C. § 72–1368(k)(1).[7] However, that subsection expressly states that determinations of facts, rights, and issues are conclusive only to the extent that the decision itself has become final. A decision by an appeals examiner only becomes final if no appeal is filed by an interested party within fourteen days of being served with notice of the decision.[8]

Thus, the provisions of I.C. § 72–1368(k)(1), which Scrivner argues proscribe the Commission's *de novo* review of the appeals examiner's entire decision, are inappli-

---

**6.** 079. AVAILABILITY RESTRICTIONS. A claimant whose actions materially affect his availability shall not be eligible for benefits. I.D.A.P.A. 09.01.30. (1994).

**7.** I.C. § 72–1368(k)(1) provides:
**72–1368. Claims for benefits and appellate procedure.—**
. . . .
(k)(1) Any right, fact, or matter in issue, directly based upon or necessarily involved in a determination, redetermination, decision of the appeals examiner or decision of the commission which has become final, shall become conclusive for all the purposes of this act as between the

interested parties who had notice of such determination, redetermination or decision. Subject to appeal proceedings and judicial review by the Supreme Court as set forth in this section, any determination, redetermination, or decision as to rights to benefits shall be conclusive for all purposes of this act and shall not be subject to collateral attack irrespective of notice.

**8. 72–1368. Claims for benefits and appellate procedure.—**
. . . .
(f) . . . Unless an interest party shall within fourteen (14) days after service of the decision of the appeals examiner file with the commission a

959

cable to the facts of this case because the appeals examiner's decision was not final. Furthermore, our Employment Security Law contemplates a unified statutory scheme. As the ultimate factfinder for determining eligibility status, the Commission is entitled to consider all the evidence and issues presented to the appeals examiner.

**B. The Commission's Finding of Fact No. 11 is supported by substantial and competent evidence.**

■ Scrivner argues that Finding of Fact No. 11 is not supported by substantial and competent evidence because the Commission misconstrued the testimony it cited in support of its finding that she was limiting her search to employment to work available between the hours of 8 a.m. and 5 p.m. Although Scrivner did not actually state that she was limiting her job search to employment available between the hours of 8 a.m. and 5 p.m., that conclusion may fairly be drawn from the fact that she obtained her real estate license in order to assist her husband's real estate clients when he was unavailable during evenings and weekends. Furthermore, Scrivner did state in her unemployment insurance benefit interview that she needed to work "8–5:00, Mon. thru Fri."

Thus, there is substantial and competent evidence in the record to support the Commission's Finding of Fact No. 11.

**C. A claimant for unemployment insurance benefits is required to begin her search for employment upon termination of her previous employment.**

Scrivner argues that, based on the Department's rules and our prior case law, claim-

ants are permitted to restrict their search for employment to work in their traditional occupation for a reasonable time.[9] Thus, she argues, the Commission erred when it concluded that she was not available for suitable work because she declined to look for work as a realtor.

■ Scrivner's employment terminated at the end of April 1992. She did not file a claim for benefits until more than three months later. Thus, while Scrivner is correct regarding the rule that a claimant may restrict her search for employment to her customary occupation for a reasonable time, the Commission correctly concluded that the period between her termination of employment and her initial claim for benefits was a reasonable time for her to limit her employment search to office management positions, after which she was obligated to broaden her search.

## III.

### CONCLUSION

■ For the foregoing reasons, we affirm the Commission's conclusion that Scrivner was not unemployed within the meaning of I.C. § 72–1312 at the time she applied for benefits. In light of our decision, we need not reach the issue of whether remand to the Industrial Commission is necessary to determine whether Scrivner was self-employed.

■ As we held in *Lowery v. Board of County Commissioners of Ada County*, 117

claim for review or unless an application or motion is made for a rehearing of such decision, the decision of the appeals examiner shall become final.

9. 078. WORK, NATURE OF. Every claimant has the right to restrict his availability to suitable work. I.D.A.P.A. 09.01.30 (1994).
. . . .
02. Suitable Work. A claimant who customarily works either inside or outside may restrict his availability for a reasonable time to that type of work for which he is best suited and shall not be denied benefits.
073.01. Prospects for Work. A claimant unemployed for a long period of time shall be

expected to lower his expectations for employment and become available for work which may not have been previously considered suitable. I.D.A.P.A. 09.01.30 (1994). *See also, Guillard v. Department of Employment*, 100 Idaho 647, 652, 603 P.2d 981, 986 (1979) (holding that "[w]ork which may be deemed 'unsuitable' at the inception of claimant's unemployment, and for a reasonable time thereafter, may thereafter become 'suitable' work when consideration is given to the length of unemployment and the prospects of obtaining customary work at [claimant's] prior earning capacity"). (Citing *Bayly Mfg. Co. v. Department of Employment*, 155 Colo. 433, 395 P.2d 216, 220 (1964).

Idaho 1079, 1081, 793 P.2d 1251, 1253 (1990), I.C. § 12–121 only pertains to civil actions which are commenced by the filing of a complaint. A claim for unemployment benefits is not such an action. Thus, Scrivner's claim for attorney fees on appeal is inappropriate.

Costs on appeal are awarded to the Department of Employment.

JOHNSON, TROUT, and SILAK, JJ., and YOUNG, Justice Pro Tem, concur.