IN THE SUPREME COURT OF THE STATE OF IDAHO

Docket No. 35014

|  |  |  |
|---|---|---|
| MERRIE E. CHAPMAN, | ) | |
| | ) | |
| Claimant-Appellant, | ) | Boise, January 2009 Term |
| | ) | |
| v. | ) | 2009 Opinion No. 50 |
| | ) | |
| NYK LINE NORTH AMERICA, INC., | ) | Filed: April 6, 2009 |
| Employer; and IDAHO | ) | |
| DEPARTMENT OF LABOR, | ) | Stephen W. Kenyon, Clerk. |
| | ) | |
| Respondents. | ) | |
| | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The findings of the Industrial Commission are affirmed.

Ronaldo A. Coulter, PLLC, Eagle, for appellant. Ronaldo A. Coulter argued.

Hall, Farley, Oberrecht & Blanton, PA, Boise, for respondent. Keely E. Duke argued.

_____

W. JONES, J.

Merrie Chapman, f/k/a Merrie Lockyer, (Chapman), appeals from the Industrial Commission's finding that she engaged in misconduct and is therefore ineligible for unemployment benefits. Chapman appeals to this Court contending that (1) the Industrial Commission abused its discretion when it denied her an evidentiary hearing, and (2) the findings which resulted in her ineligibility for unemployment benefits are not supported by substantial and competent evidence. Chapman's former employer, NYK Line North America (NYK Line), requests attorney's fees on appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

Chapman was discharged from her position with NYK Line on July 19, 2007 for failure to comply with an investigation. The investigation was the result of a complaint filed by

1

Chapman in June 2007.[1]  On July 18, 2007, a human resources representative informed Chapman that she would be meeting that afternoon with Tamsen Leachman (Leachman), an attorney hired by NYK Line to investigate the June 2007 complaints.  Prior to the afternoon meeting, Chapman purchased a Sony 570V tape recording device at an office supply store.  The sales associate put the batteries and blank tape into the recorder and Chapman placed the recorder in her purse.  Chapman ate lunch and then proceeded to the meeting with Leachman which was scheduled at 2:00pm that afternoon.  The following is Leachman's account of the meeting as prepared in the confidential investigative report.  The purpose of the report is to "serve to summarize the results of [Leachman's] investigation into various employment-related allegations made against NYK Lines, Inc. (NYK) by Merrie [Chapman]."[2]

> As for [Chapman], her cooperation and credibility were significant factors in how I viewed the information learned during her interview.  As noted above, I met with [Chapman] on July 18 to discuss the various issues she raised in her internal complaint.  At the beginning of the discussion, [Chapman] asked if she could tape record the conversation.  I told her "no," and then explained the various reasons for this.  I shared that this was my choice and decision, and that I have determined based on my experience that recording impairs productive discussion and creates greater risk of breach of confidentiality.  I told her I would not conduct an interview if there was insistence on it being recorded and asked her if I had her agreement about the basis for going forward.  She responded that she understood and agreed.  At that point, she pulled out a pad of paper and a pen for taking notes (although she did not use this at any point during the meeting).  I then addressed my concerns about notes being shared, and reminded her of the importance of confidentiality, particularly while the investigation was active and open.

The interview then progressed for an hour and a half, at which point Leachman left the room to retrieve some documents.  Her absence lasted only a few minutes.  Approximately thirty minutes following Leachman's return there was a loud beep.  Leachman inquired into the source of the beep and Chapman pulled the tape recorder from her purse and denied that she had been recording the interview.  Leachman listened to the tape and confirmed with Chapman that the voices on the tape were their own.  Leachman's report summarized her opinion on the incident:

> [After the interview] I attempted to contact [the human resources representatives]. I left messages expressing my deep concern about [Chapman's] integrity and honesty, and my belief that she had significantly impaired the investigation with her conscious decision to ignore our agreement regarding recording, and to be less than truthful about what she did.  I do not believe the recording was accidental,

---

[1] Chapman filed a complaint alleging that she was subjected to a hostile work environment.
[2] Leachman's report ultimately concluded that Chapman had not been subjected to a hostile work environment.

and it troubles me that she chose to cover up one dishonest act with another, particularly in the context of an investigation of her complaints where credibility assessment was so critical. I have been involved in many investigations where tape recording of management meetings was viewed as a significant breach of trust or violation of a company directive. When I talked with you later about this I advised that I viewed the conduct by [Chapman] to be equally if not more serious, and shared that I felt termination of employment was warranted.

Chapman was terminated on July 19, 2007 for "being untruthful and for failure to comply with an investigation." Chapman filed for and was awarded unemployment benefits on July 20. NYK Line timely challenged that determination and a telephonic hearing was held by an appeals examiner. The appeals examiner reversed the eligibility determination, finding that Chapman intentionally recorded the meeting in violation of her agreement with Leachman and therefore, compromised the employment-related investigation. The appeals examiner found that Chapman's dishonesty and breach of trust qualified as misconduct in connection with employment. Chapman appealed to the Industrial Commission and requested a hearing to present additional evidence. The Industrial Commission denied the request to present additional evidence and affirmed the appeal examiner's decision. Chapman continues to maintain that the recording was accidental and unintentional and that the recorder was activated when she reached into her purse for a piece of gum. Chapman appeals the Industrial Commission's decision to this Court.

**ISSUES ON APPEAL**

This Court is presented with the following issues on appeal:

1. Whether the Industrial Commission abused its discretion in denying an evidentiary hearing as requested by Chapman.

2. Whether the Industrial Commission's decision is supported by substantial and competent evidence.

3. Whether NYK Line is entitled to attorney's fees on appeal pursuant to I.C. § 12-121.

**STANDARD OF REVIEW**

"On appeal from the Industrial Commission, this Court exercises free review of the Commission's legal conclusions, but will not disturb findings of fact if they are supported by substantial and competent evidence." *Giltner, Inc. v. Idaho Dept. of Commerce and Labor*, 145 Idaho 415, 418, 179 P.3d 1071, 1074 (2008) (quoting *Steen v. Denny's Rest.*, 135 Idaho 234, 235, 16 P.3d 910, 911 (2000)). "Substantial and competent evidence is relevant evidence that a

reasonable mind might accept to support a conclusion. . . . We do not re-weigh the evidence or consider whether we would have reached a different conclusion from the evidence presented." *Uhl v. Ballard Med. Prod., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003) (internal citations omitted).

ANALYSIS

**The Industrial Commission did not abuse its discretion in denying the evidentiary hearing requested by Ms. Chapman**.

"The record before the commission shall consist of the record or proceedings before the appeals examiner, unless it appears to the commission that the interests of justice require that the interested parties be permitted to present additional evidence." I.C. § 72-1368(7). The decision to allow for additional evidence is in the "sole discretion" of the Industrial Commission. I.C. § 72-1368(7). "This Court thus reviews the Commission's decisions regarding supplemental hearings under the abuse of discretion standard. *Teevan v. Office of the Attorney Gen.*, 130 Idaho 79, 81, 936 P.2d 1321, 1323 (1997). "This section is not carte blanche allowing . . . [the party] the unbridled right to present a substantially new case, absent some showing as to why the evidence had been unavailable earlier." *Id.* (quoting *White v. Idaho Forest Indus.*, 98 Idaho 784, 785 n. 1, 572 P.2d 887, 888 n. 1 (1977)).

The Industrial Commission does not abuse its discretion when (1) the issue is correctly perceived as discretionary, (2) the Industrial Commission acts within the bounds of that discretion and consistent with the applicable legal standards, and (3) the decision is reached through an exercise of reason. *Super Grade, Inc. v. Idaho Dept. of Commerce and Labor*, 144 Idaho 386, 390, 162 P.3d 765, 769 (2007).

Chapman requested a hearing for her appeal to "enable the Industrial Commission to examine a Sony 570V tape recorder which has the Voice Operated Recording (VOR) feature with tape." The request stated that the tape recorder "is central to [Chapman's] claim that she did not engage in any misconduct," and that the evidence was not presented below because it was a telephonic hearing and would have required Chapman to purchase two additional tape recorders.

The Industrial Commission held that Chapman "has not demonstrated that the only way in which the Commission can understand the functioning of the tape recorder at issue is to actually view it. . . . [W]e are satisfied that the tape recorder and its operation can be accurately

and sufficiently explained through the documentary appeals record." In its order establishing briefing schedule the Industrial Commission recognized that the authority to grant an appeals hearing is solely in the discretion of the Industrial Commission and that granting a hearing "is an extraordinary measure and should be reserved for those cases when due process or other interests or justice demand no less." Appellant has never explained why the operation of the tape recorder could not be explained in writing or by offering the operation manual as an exhibit for the hearing examiner. Therefore, this Court finds that the Industrial Commission did not abuse its discretion. It recognized the issue as discretionary and acted within the bounds of that discretion and reached its decision through an exercise of reason. The decision to deny the hearing is affirmed.

**The Industrial Commission's decision is supported by substantial and competent evidence**.

The decision of the Industrial Commission must be supported by substantial and competent evidence. *Uhl*, 138 Idaho at 657, 67 P.3d at 1269. An employee is not eligible for unemployment benefits if the unemployment is the result of "discharge[] for misconduct in connection with his employment." I.C. § 72-1366(5). Whether the discharge for misconduct is work-related "is a factual determination." *Beaty v. City of Idaho Falls*, 110 Idaho 891, 892, 719 P.2d 1151, 1152 (1986). The burden of proving misconduct is on the employer. *Id.* This Court has rejected the proposition that "any discharge that is reasonably based on the employer's own rules will always result in a denial of the discharged employee's unemployment benefits." *Beaty*, 110 Idaho at 892, 719 P.2d at 1152. "[T]here must be a deliberate and intentional violation of the spirit of the rule." *Id.* at 893, 719 P.2d at 1153. Misconduct is defined as "(1) a willful, intentional disregard of the employer's interest; (2) a deliberate violation of the employer's rules; or (3) a disregard of standards of behavior which the employer has a right to expect of its employees." *Quinn v. J.R. Simplot Co.*, 131 Idaho 318, 321, 955 P.2d 1097, 1100 (1998).

Chapman does not dispute that the failure to comply with an investigation would constitute grounds for immediate termination. The only dispute before the Industrial Commission was whether Chapman had intentionally or unintentionally recorded the interview. At oral argument Chapman's counsel stated that the issue on appeal is a fact intensive issue.

This Court finds that the Industrial Commission's decision is supported by substantial and competent evidence.

The Industrial Commission found it reasonable that Leachman requested Chapman not to record the interview. It further found "that recording the interview without authorization would be an act that constitutes a failure to comply with the investigation." Further, "secretly recording the interview after [Chapman] specifically agreed that she would not do so does jeopardize the integrity of the interview, and thus the investigation. . . . [W]hich is particularly troubling given that [Chapman's] complaints . . . initiated the investigation." Ultimately, the Industrial Commission held that the recording was made intentionally. The Industrial Commission was unable to find a reconcilable reason for Chapman's statement on the beginning of the tape stating "[o]k, I am recording now" immediately preceding the recorded conversation between the two women.

> [Chapman] offers the fact that the device has a voice (or noise) activation feature on it that could have been triggered when she made noise rummaging through her purse. However, inadvertently activating the device in such a manner is inconsistent with [Chapman's] prefatory statement "Ok, I am recording now" that can be heard on the tape. Additionally, the testimony indicated that in addition to noise, the device (the VOR slide button) also needed to be manually placed on the setting which would activate the recording device upon hearing noise. Although [Chapman] was unfamiliar with the device and asserts that the store clerk "set up" the device at the store, it is unclear why such a "very sensitive" noise-activated device was only activated at that moment and not at some point during the two hours prior while [Chapman] carried it around and ate lunch. Furthermore, the tape only appears to start recording one time, as opposed to multiple starts and stops as would be expected if it was continually being activated by outside noises.
> . . .
> The tape was only 30 minutes long. If [Chapman] made the prefatory statement that activated the device at the store at roughly 1:18 p.m., it is unclear why the tape didn't run out before the interview even started at 2:00 p.m.

It is clear that the Industrial Commission's factual finding that Chapman had intentionally recorded the conversation is supported by substantial and competent evidence. Chapman has done nothing more than ask this Court to re-weigh the evidence. This Court will not overturn factual findings, even if conflicting evidence exists, if those findings are supported by "relevant evidence that a reasonable mind might accept to support a conclusion." *Edwards v. Independence Services, Inc.*, 140 Idaho 912, 914, 104 P.3d 954, 956 (2004). This Court affirms the Industrial Commission's decision.

**NYK Line is not entitled to attorney's fees on appeal pursuant to I.C. § 12-121**.

During oral argument NYK Line withdrew the request for attorney's fees pursuant to I.C. § 12-121 and conceded that I.C. § 12-121 is inapplicable in a claim for worker's compensation benefits. "In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties." I.C. § 12-121. "I.C. § 12-121 only pertains to civil actions which are commenced by the filing of a complaint. A claim for unemployment benefits is not such an action." *Scrivner v. Service IDA Corp.*, 126 Idaho 954, 960, 895 P.2d 555, 561 (1995). This Court agrees; NYK Line is not entitled to attorney's fees on appeal pursuant to I.C. § 12-121.

## CONCLUSION

For the foregoing reasons, this Court affirms the decision of the Industrial Commission.

Justice HORTON, and Justice pro tem TROUT, **CONCUR.**

JONES, J., dissenting.

I respectfully dissent. My view is that the employer, NYK Line, failed to establish either that Chapman deliberately violated its rules or that she disregarded standards of behavior which it had a right to expect of her. Further, there is no substantial and competent evidence in the record that Chapman "failed to comply with an investigation." I would reverse the Industrial Commission determination.

The Commission concluded that Chapman was ineligible for unemployment compensation benefits based on its determination that she was discharged for misconduct in connection with her employment. Misconduct for which unemployment benefits can be denied has been defined by this Court as (1) a willful, intentional disregard of the employer's interest, (2) a deliberate violation of the employer's reasonable rules, or (3) a disregard of a standard of behavior which the employer has a right to expect of his employees. *Kivalu v. Life Care Ctrs. of America*, 142 Idaho 262, 263-64, 127 P.3d 165, 166-67 (2005); IDAPA 09.01.30.275.02. The Commission based its decision on the latter two grounds – that Chapman "deliberately disregarded employer's rules" and that she "violated the standards of behavior that Employer has a right to expect from its employees." Both the rule and the standard of behavior relied upon by the Commission are embodied in a written policy of NYK Line, requiring employees to "comply with investigations." As stated by the Commission:

> Employer discharged Claimant for failure to comply with an investigation as provided for in its written policy. The policy states that "Failure to comply with

investigations" is prohibited conduct for which immediate termination may be appropriate.

Three questions present themselves: (1) whether the record contains substantial and competent evidence that NYK Line had a rule or standard of behavior prohibiting the recording of this type of interview; (2) whether Chapman failed to comply with the investigation; and (3) assuming that Chapman agreed not to record the interview, whether her breach of such agreement constitutes a breach of an employer rule or standard of behavior. The questions will be dealt with in the order stated.

NYK Line's policy requiring compliance with investigations says nothing about whether or not an investigative interview may be recorded by anyone involved. During oral argument, counsel for NYK Line candidly admitted that the company had no rule prohibiting the secret recording of an interview such as that involved in this case. However, NYK Line contended that the investigator, Ms. Leachman, when setting the ground rules for the interview, had the authority, acting on its behalf, to establish an employer rule or standard of behavior, the violation of which would constitute misconduct. In his findings of fact, the appeals examiner set out the alleged rule or standard of behavior as follows:

> When the claimant met with Ms. Leachman, the claimant asked Ms. Leachman if she could record the meeting. Ms. Leachman stated, "No." Ms. Leachman explained that she did not want to have her interviews recorded because of the potential for a breach of confidentiality and because in Ms. Leachman's experience she found that the people she interviewed tended to be more guarded and less forthcoming when the meeting was being recorded. The claimant agreed not to record the interview.

The Commission adopted this and the other findings of the appeals examiner.

The question, then, is whether the investigator possessed the authority to establish an employer rule or standard of behavior that prohibited the secret recording of the interview. Although NYK Line contends that Ms. Leachman had the authority to adopt such a rule or standard of behavior, the Commission's findings on the issue are in conflict. The Commission first states in its Decision and Order, "Employer hired Tansom Leachman . . . as an independent outside investigator to investigate Claimant's complaints." Later on in the Decision and Order, however, the Commission refers to Ms. Leachman as "an authorized agent of employer conducting the investigation." These two findings appear to be at odds – one would not assume that an independent outside investigator would have the authority to adopt and implement rules

8

or standards of behavior binding on the employees. Indeed, there is no specific finding in the Decision and Order indicating that, even if Ms. Leachman was an authorized agent, she had the authority to adopt rules and standards of behavior on behalf of the employer. Although the Commission identifies Ms. Leachman's request that the interview not be recorded as a policy of the employer, it also specifically referred to that policy as "Ms. Leachman's policy." Because (1) NYK Line had no specific policy prohibiting an employee from secretly recording an investigatory interview, (2) the Commission has failed to identify evidence supporting the conclusion that Ms. Leachman had the authority to adopt a rule or standard of behavior in that regard, and (3) the Commission's findings are in conflict on that specific issue, the Commission erred in determining that such a rule or standard of behavior existed.

Nor is there substantial and competent evidence in the record to support the conclusion that Chapman failed to comply with the investigation. Ms. Leachman successfully concluded her investigation, finding no evidence that Chapman had been subjected to a hostile work environment or unlawful retaliation. Ms. Leachman indicated she did not wish to have the interview recorded because of her concerns regarding confidentiality and because of her experience that people tended to be more guarded and less forthcoming when an interview is being recorded. There is no indication in the record that either of these concerns were implicated in Chapman's recording of a part of the interview. We have only the interviewer's conclusory statements as to why recording might not, as a general rule, be desirable. One can make an equally good argument that a verbatim record is much to be preferred and, indeed, that argument is frequently made before this Court, particularly in criminal proceedings. A recording documents exactly what was said, eliminating later interpretative spin by the parties. As a matter of fact, this Court demands an accurate verbatim record in all appellate proceedings. Since there is no evidence indicating that the secret recording of a portion of the interview resulted in a compromise of the investigation, there is no ground for finding that Chapman failed to comply with the investigation.

Indeed, aside from Chapman's recording activity, the Commission found no fault with her compliance. According to the Commission:

> Claimant accurately argues that Employer's policy regarding the failure to comply with an investigation lacks any definition of what acts might constitute such failure. However, we agree with Employer that recording the interview without authorization would be an act that constitutes a failure to comply with the

9

investigation. Claimant repeatedly emphasized that in all other respects she cooperated with the interview and the investigation. We have no reason to doubt that.

The Commission did go on to assert that the secret recording jeopardized the integrity of the interview, but failed to identify any evidence indicating that to be the case.

Further, there is certainly no public policy in the State of Idaho that would prohibit either an employer or an employee from recording conversations or interviews between them. Idaho's Communications Security Act, Idaho Code §§ 18-6701 to 6725, specifically declares it to be lawful for a person to record an oral conversation with the consent of one party to the conversation. Idaho Code § 18-6702(2)(d). Of course, an employer could implement such a policy but, as noted above, that does not appear to have occurred in this case.

Although Chapman denies having purposely recorded any part of the interview, the Commission found, based on conflicting evidence, that she had. The question then becomes, whether Chapman violated a standard of behavior of her employer by failing to carry through with the commitment that she would not record the interview. An employer certainly has the right to expect that an employee will be honest and straightforward in responding to an investigation, particularly when there is a written policy requiring employees to comply with investigations. However, while it was certainly not commendable of Chapman to state that she would not record the interview and then go on to do so, there is no indication that she lied with regard to any question relating to the substance of the investigation. The breach of her commitment to refrain from recording was with respect to a peripheral matter regarding the procedure of the interview and not its substance.

Where the employer had no stated rules regarding the permissibility of recording such an interview and where we are concerned with the expectations of the independent outside investigator, instead of any expectations of the employer in that regard, it does not appear that the requirements for a standard-of-behavior case have been met. "Under the standard of behavior test, [the employer] must prove by a preponderance of the evidence that (1) claimant's conduct fell below the standard of behavior expected by the employer; and (2) that its expectations were objectively reasonable in [the] particular case." *Harris v. Electrical Wholesale*, 141 Idaho 1, 4, 105 P.3d 267, 270 (2004). "The employer's expectations must be communicated to the employee unless they flow naturally from the employment relationship."

*Pimley v. Best Values, Inc.*, 132 Idaho 432, 435, 974 P.2d 78, 81 (1999). The record reflects what Ms. Leachman's expectations were but it does not disclose that those expectations were those of the employer or that they were properly attributable to the employer.

In sum, it does not appear to me that NYK Line presented substantial and competent evidence that Chapman engaged in misconduct such that she should be deprived of unemployment insurance benefits. The record does not establish that NYK Line had a policy prohibiting the secret recording of investigatory interviews or that its independent outside investigator had the ability to implement such a policy on its behalf. Any lack of candor on the part of Chapman was with respect to a peripheral matter – whether or not it was appropriate to record the interview – and not a matter relating to the substance of the interview. There is no evidence in the record that Chapman either compromised or failed to comply with the investigation. I would reverse the Commission's decision.

Justice BURDICK CONCURS.